[Civ. No. 821. Third Appellate District.—February 4, 1911.]

LEWIS A. HILBORN, Petitioner, v. A. B. NYE, as Controller of the State of California, Respondent.

MANDAMUS TO CONTROLLER—COMPENSATION OF EMPLOYEES OF LEGISLATURE—LIMIT OF POWER UNDER CONSTITUTION.—A writ of mandate will not lie to compel the controller of state to draw a warrant for extra session work authorized by the legislature to be performed by the officers, employees and attachés of the Senate and Assembly, where it appears that each house had expended the full limit of $500 per diem allowed during the session, as fixed by the amendments of 1908 to section 23 of article IV of the constitution.

ID.—POWER OF LEGISLATURE—IMPROPER CONSTRUCTION OF AMENDMENT.—Though the power of the legislature is unlimited, except as prescribed by the constitution, and its motives cannot be inquired into, it has no power beyond the constitutional limit, which must be properly construed. The amendment of 1908 cannot be construed as confining the limit merely to expenses incurred during the session only, and leaving to the legislature unrestricted power to authorize the payment of post session expenses independently of the $500 per day limit allowed to each body during the session.

ID.—JUDICIAL COGNIZANCE OF EVIL TO BE REMEDIED IN CONSTRUING AMENDMENT.—This court, in construing the limitation fixed by the amendment to the constitution, has power to take judicial cognizance of the existence of the evil which the legislature in framing such amendment, and the people in ratifying it, endeavored to correct. This evil consisted of wasteful expenditures of large sums of the state's money, reaching beyond its final adjournment.

ID.—MODE OF PROVISION FOR EXTRA SESSION WORK—UNEXPENDED LIMIT.—The legislature has power only to provide for extra session work out of any unexpended part of the *per diem* limit allowed

to each house. If the legislature should exhaust that limit during its session, it has no authority of law to make an appropriation for extra session work, no matter how important it may be. Either the Senate or Assembly, or both, must make provision for post session work out of the $1,000 per day allowed to both houses, else it cannot be paid from the public treasury.

PETITION for writ of mandate to the controller of state.

The facts are stated in the opinion of the court.

Kleinsorge & McKisick, for Petitioner.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—This is an application for a writ of mandate directing respondent to pay certain claims of certain officers and employees of the Senate and Assembly of the state for their services in connection with the thirty-eighth session of the legislature. The attorney general interposed a demurrer to the petition on the ground of insufficient facts to entitle petitioner to the relief claimed.

It appears from the petition that the legislature convened on January 1, 1909, and on or about that date petitioner was elected secretary of the Senate and J. W. Harper was elected history clerk; that they entered upon and continued in the performance of their duties as such officers until the close of the session, "and thereafter continued in the performance of certain duties enjoined upon them by law and by the order and direction of the Senate," as set forth in the petition. That the Assembly, at or about said date, elected Clio Lloyd to the office of chief clerk, who by consent of the Assembly appointed T. G. Walker as assistant clerk, both of whom thereupon entered upon their duties as such officers and continued in the discharge of the same until the close of the session, and thereafter continued in the performance of certain duties "enjoined upon them by law and direction of the Assembly" as in said petition set forth; that "in the manner provided by law, the Senate and Assembly . . . by appropriate legislation, set apart and established certain funds known respectively as the Senate Contingent Fund and the Assembly Contingent Fund, and by law authorized the state controller to draw his warrant upon said fund from time to time and for such

amounts and in favor of such persons as the Senate and Assembly might determine, and authorized and directed the treasurer to pay the same.    That at all times hereinafter mentioned, there remained, and now remains, in the respective contingent funds of the Senate and Assembly of the state of California, set apart and established as aforesaid, sufficient money to pay each and all of the claims and demands against said respective contingent funds arising as hereinafter set forth.''

It is then alleged that, on the sixteenth day of March, 1909, the Senate passed a certain resolution, which is set forth in the petition.    In substance this resolution directs the secretary of the Senate to compile, after final adjournment, a full calendar of the legislative business of the thirty-eighth session, specifically pointing out what this calendar shall contain and provides for the printing thereof, ''such information being prepared not only for the book but as a guide for the thirty-ninth session of the legislature''; the secretary is directed ''to mail or express one copy of said calendar to each member of the Senate,'' and the resolution appropriates $750 to meet said expenses, ''the same payable out of the contingent fund of the Senate.''

By a similar resolution, passed on March 17, 1909, the Senate directed the state printer to print 10,000 copies of Senate Bill No. 18, and to bind 2,000 copies of the same, and directs the secretary of the Senate to mail or express to each senator thirty bound copies and fifty printed copies, and directs the controller to draw his warrant in favor of the secretary of the Senate for the sum of $900, ''to pay said postage and expressage on same and be properly indorsed.''    .

A third resolution was adopted by the Senate, on March 23, 1909, authorizing the secretary and assistant secretary, at the close of the session, to arrange all bills and papers belonging to the archives of the Senate and deliver them to the Secretary of State, and appropriates $50 therefor, to be paid out of the contingent fund of the Senate.

A fourth resolution, passed by the Senate on March 23, 1909, instructs ''J. W. Harper, history clerk, to complete the final history of the Senate,'' and appropriates $100 out of the contingent fund to pay him for said service.

It is then alleged that the Assembly, on March 10, 1909, by resolution, directed 300 copies of each and all the chapters of

the thirty-eighth session printed and delivered in sets to the chief clerk, within one week after all the bills receiving the governor's approval shall have been signed by him, and directs the chief clerk to express said chapters to the members, charges prepaid, and appropriates out of the contingent fund $150 to pay the expense thereof.

A second resolution was passed by the Assembly, March 18, 1909, directing the chief clerk to compile and have printed, after final adjournment, a final calendar, similar to that provided for by the Senate; directs the chief clerk to mail or express to each member of the Assembly a copy of said calendar, and appropriates out of the contingent fund $750 for said purposes.

A third resolution was passed by the Assembly, March 20, 1909, directing Thomas G. Walker, assistant to the chief clerk, to assist the chief clerk in preparing and having printed, after final adjournment, a calendar apparently little different from the resolution, passed on March 18th, also directing that copies be mailed or expressed to members, charges prepaid, and appropriates $350 out of the contingent fund, to pay for the same.

A fourth resolution was passed by the Assembly, March 24, 1909, directing "the chief clerk and the four assistants to the chief clerk," at the close of the session, to mark, label and arrange all bills and papers belonging to the archives of the Assembly, and deliver the same to the Secretary of State, and appropriates out of the contingent fund for such services $50 for each of said officers.

It is then averred that the said clerks, each of them, performed the services required of them as aforesaid, and demanded of the controller that he draw his warrant for the sums each was entitled to, in accordance with said resolutions, but the controller refused, and still refuses, to do so.

It is admitted by the petitioner that the Senate and Assembly "had each of them expended an average daily sum of $500 for the compensation of officers, employees and attachés of the said Senate and Assembly respectively for each day of the regular session of the legislature then ending otherwise or in addition to the amounts specified to be paid" to said claimants by said resolutions; and admits that "during all said

times'' the said claimants were officers of the Senate and Assembly respectively as alleged.

It is further alleged that the work mentioned in said resolutions ''was necessary and proper to be done, and that the same could not from its very nature be done during the continuance of said regular session of the legislature, or until after the adjournment of the legislature, or until the governor of the state had performed his constitutional and statutory duties with respect to the various bills awaiting action at his hands upon the adjournment of the legislature.''

It is then alleged that certain of said claimants had assigned their said claims to petitioner.

The total amount of said several appropriations is the sum of $3,350.

At the general election held in November, 1908, two proposed amendments to section 23 of article IV of the constitution were ratified. Section 23 reads as follows:

''The members of the legislature shall receive for their services, the sum of one thousand dollars each for each regular session, to be paid at such times during the session as may be provided by law, and the sum of ten dollars each, for each day while in attendance at a special or extraordinary session, for a number of days not exceeding thirty; and mileage to be fixed by law, all paid out of the state treasury; such mileage shall not exceed ten cents per mile; and each member shall be allowed contingent expenses not exceeding twenty-five dollars per member for each regular biennial session. The legislature may also provide for additional help; but in no case shall the total expenses for officers, employees and attachés exceed the sum of five hundred dollars per day for either house, at any regular or biennial session, nor the sum of two hundred dollars per day for either house, at any special or extraordinary session, nor shall the pay of any officer, employee or attaché be increased after he is elected or appointed.'' .

At the same election another amendment to the same article was adopted as section 23a. It is identical in terms with the concluding paragraph of section 23.

Petitioner states the single question now presented as follows: ''Is the amendment limited in its application to the actual duration of a regular or biennial session, or does the prohibition therein expressed continue beyond the time of ad-

journment and forbid the legislature and the several houses thereof to order certain post session work to be done and to provide for the necessary expenses of such work, as well as the compensation of the persons performing it?''

It is claimed by the petitioner that section 31, article IV, forbidding the legislature to make any gift, and section 32 of the same article, prohibiting the grant of any extra compensation to any public officer, have no application; hence the argument was confined exclusively to the construction to be given section 23.

Petitioner points out certain statutory duties devolved upon the secretary of the Senate and the clerk of the Assembly and their respective assistants, as found in sections 253, 254, 261 and 269 of the Political Code. He also calls attention to certain rules of the Senate and Assembly, prescribing the duties of the secretary of the former and clerk of the latter respectively, but they do not seem to enlarge the scope of the duties prescribed by statute; and it may be conceded that the duties thus prescribed by statute and the rules of the two houses are broad enough to embrace at least some, if not all, the directions given in said resolutions. The power of the legislature is omnipotent and unlimited, except as circumscribed by the constitution. (*Kingsbury* v. *Nye,* 9 Cal. App. 574, [99 Pac. 985]; *In re Madera Irr. Dist.,* 92 Cal. 307, [27 Am. St. Rep. 106, 28 Pac. 272, 675, 14 L. R. A. 755].) In the Madera Irr. Dist. Case the court said: ''It is incumbent upon anyone who will challenge an act of the legislature as being invalid to show, either that such act is without its province of legislation, or that the particular subject matter of that act has been by the constitution, either by express provision or by necessary implication, withdrawn by the people from the consideration of the legislature. The presumption which attends every act of the legislature is, that it is within its power; and he who would except from the power must point out the particular provision of the constitution by which the exception is made, or demonstrate that it is palpably excluded from any consideration whatever by that body.''

Respondent contends that the amendment of the constitution referred to has withdrawn from the legislature the power to expend directly or indirectly by either house, for officers, employees and attachés, any sum of money whatever, in con-

ducting the business of a regular or biennial session, in excess of $500 multiplied by the number of days of the session. For example, if the legislature sits for sixty days and no longer, the extreme limit of its expenditures is the sum of $1,000 multiplied by 60, or $60,000.

Petitioner meets this contention in two ways: First, by giving a construction to the words, "*at* any biennial session" which makes them equivalent to and intended to mean "*during* any biennial session"; that is to say, that the amendment means that either house of the legislature shall not expend in excess of $500 per day during the period of its session, including the day of final adjournment, but may make any necessary provision for continuing the work of its officers and employees thereafter; and, second, that such officers and employees may be paid, in the present case, out of the appropriation made for the contingent fund of the Senate and Assembly, found in the appropriation act of March 22, 1907 (Stats. 1907, p. 859), for the support of the legislature during the fifty-ninth and sixtieth years.

Petitioner calls our attention to many cases, involving human affairs of great variety, where the courts have construed the word "at" to mean "during," in conformity to the rule that words are to be deemed to have been employed in their natural and ordinary sense. For example, an act required to be done "at the term of court" was held to mean "during the term." (*Lawver* v. *Langhans,* 85 Ill. 138.)

While it is settled that the motives of the legislature, in enacting legislation, will not be inquired into, yet it is also settled, and petitioner concedes, "that this court has undoubted power to take judicial cognizance of the existence of an evil which the legislature, in framing the amendment under consideration, and the people in ratifying it, endeavored to correct." Petitioner then states: "This evil was the wasteful expenditure of large sums of the state's money at each session of the legislature in the employment of persons whose services were not necessary to the transaction of the business of the legislature, but whose importunities were too insistent to be denied." The evil was more extensive than petitioner has stated, for its influence reached beyond the final adjournment, as is evidenced by the resolutions involving a post legislative expenditure of nearly $4,000, much

of which was obviously unnecessary; and it is needless to add that if this sum was constitutionally authorized, there is no limit whatever to be placed upon post session expenditures for like purposes. The construction contended for would stop the flow of money from the treasury through the spigot but would still leave open the flow at the bung.

The purpose of one of the amendments, as declared in the title, was to limit "the expenses of employees of the Senate and Assembly," and as declared in the other, to define the "limitation of the expense of the employees of the Senate and Assembly." And these proposed amendments were submitted to the people in response to a universal demand that the expenses of the legislature, in whatever form incurred, should be definitely limited. The legislature itself fixed the amount, and we must presume that it carefully considered and determined what amount would cover all legitimate expenses in any way connected with its duties, or the duties of its employees, arising out of its session. By the same amendment the pay of the legislators was fixed at a specified sum for each session, and no limit was placed upon the duration of the session.

It seems to us that, when we consider the evil which it was the aim of the amendment to remedy, it means that either house may at any regular session provide for the employment of help, but in no case shall it provide for an expense for officers, employees and attachés to exceed the sum of $500 per day for either house, nor the sum of $200 per day for either house for any special or extraordinary session. The limitation is of the power to exceed these sums or to authorize in any way any increase of these sums. We cannot accept petitioner's construction that the limitation of the power was confined to expenses incurred during the session, and left open to the legislature an unrestrained and unlimited power to authorize the payment of post session expenses independently of the $500 per day limit to each body.

It is true that some work must be done by the officers of each of the bodies after final adjournment, and, clearly, they should be paid for such work. But the legislature must provide for this necessity out of the $500 per day given each body to meet its expenses. It is not within the province of the court to point out how this may be done.

15 Cal. App.—20

We do not attach importance to petitioner's second point. In the general appropriation act for 1907 there were the following items:

"For pay of officers and clerks of the Senate......$21,000
"For pay of officers and clerks of the Assembly.... 28,000
"For contingent expenses of the Senate.......... 45,000
"For contingent expenses of the Assembly.......... 52,000"

These appropriations were made before the constitution was amended, and were to meet the contingent expenses of the two houses, under the then existing provision of the constitution. But by the subsequent adoption of the amendment before the money thus appropriated was expended, the amounts were available only to the extent authorized by the constitution.

Turning to the general appropriation act of 1909 (Stats. 1909, p. 1106), it would appear that the legislature had the amendment of the constitution in mind, for the appropriation there reads as follows:

"For pay of officers and clerks of the Senate......$30,000
"For pay of officers and clerks of the Assembly.... 30,000
"For contingent expenses of the Senate.......... 5,000
"For contingent expenses of the Assembly.......... 7,000"

This act seems to provide for a sixty-day session, and provision is made to pay the officers and clerks $60,000, or $500 per day for each house, the intention, no doubt, being to include the persons mentioned in the amendment of the constitution, namely, "officers, employees and attachés." But should the legislature consume this entire amount while in session, and adjourn finally after having expended the full $500 per day for each house for the entire session, there would be no authority of law to make an appropriation to pay for work done by "officers, employees or attachés" after final adjournment. There being no limitation as to duration of the session, further appropriations may be made to pay for the services of these persons during the session, but the point we wish to make clear is this—that there is no authority of law for paying "officers, employees or attachés" for services to be performed after final adjournment, except it be from unexpended money which had formed a part of the $1,000 per day provided for the two houses while in session. Either the Senate or Assembly, or both, must make provision for these

post session services out of this $1,000 per day, or such services cannot be paid for from the public treasury.

The writ is denied.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1911.