[Civ. No. 24645. Third Dist. May 21, 1986.]

PEOPLE'S ADVOCATE, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
CALIFORNIA LEGISLATURE et al., Real Parties in Interest.

320

**COUNSEL**

Ronald A. Zumbrun, John H. Findley, Jonathan M. Coupal and Charles M. Sambol for Petitioner.

No appearance for Respondent.

Remcho, Johansen & Purcell, Joseph Remcho, Robin B. Johansen, Kathleen J. Purcell, Barbara A. Brenner, Charles C. Marson, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Jerome B. Falk, Jr., Steven L.

Mayer, Bion M. Gregory, Jack I. Horton, James L. Ashford and Mark Franklin Terry for Real Parties in Interest.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Janice Rogers Brown, Deputy Attorney General, as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**THE COURT.**\*—At the June 5, 1984, election the people adopted a statutory initiative measure entitled the "Legislative Reform Act of 1983" (the Act). The "First" part of the Act repeals various Government Code sections; the "Second" part adds chapter 8, part 1, division 2 (§§ 9900-9937) to the Government Code.[1] This latter part makes sweeping changes in the organization and operation of the Assembly and Senate and limits the content of future legislation which appropriates money for their operations. Petitioners, People's Advocate, Inc. and five California taxpayers, filed suit in the Sacramento Superior Court against the real parties in interest, the California Legislature, the Senate and Assembly of the State of California and their individual and joint rules committees. The suit sought a declaration that the Act was valid and an order compelling compliance with its terms.

The real parties moved for judgment on the pleadings, challenging the provisions of the Act which regulate the internal rules, the selection of officers and employees, the selection and powers of committees of the houses of the Legislature and which limit prospectively the content of budget legislation as violative of the California Constitution; real parties challenged the remaining provisions as inseverable from the invalid provisions. The superior court granted the motion and entered judgment declaring the entire Act unconstitutional and of no force or effect. Petitioners then filed an original petition for a writ of mandate in this court seeking to vacate the judgment of the superior court. We issued an alternative writ.

We shall deny relief as to those provisions of the Act found by the trial court to be violative of the Constitution. However, the remaining provisions of the Act relating to secrecy in legislative proceedings are severable and as to those we shall issue a writ directing the trial court to vacate its judgment declaring their invalidity.

---

\*Before Puglia, P. J., Evans, J., and Blease, J.

[1]The full text of the Act is set forth in the appendix to this opinion. All statutory references are to Government Code sections as referred to in the First and Second parts of the Act.

## Discussion

■ It is well to be clear at the outset what this case is and is not about. First, the issue before this court is one of law, not policy; it is whether the Act is constitutional, not whether it is necessary or wise. We address that issue and that issue alone. Second, this case is not about whether the will of the people shall be heeded. The Act is not the only relevant expression of popular sentiment in this case. (See *Fair Political Practices Com.* v. *State Personnel Bd.* (1978) 77 Cal.App.3d 52, 56 [143 Cal.Rptr. 393].) The provisions of the California Constitution (art. IV, § 7) which empower the houses of the Legislature to govern their own proceedings were first enacted almost 150 years ago and have twice been reenacted by the electorate.[2] They are part of a constitutional structure of government by which the people have made statutes—even initiative statutes—subordinate to the Constitution, and have empowered the courts of this state in the exercise of the judicial power to interpret the state's fundamental charter. We are not presented with a conflict between the voice of the people expressed directly and through their elected representatives, but between two conflicting directives from the electorate: the Act and the California Constitution.

■ The powers challenged by the Act are deeply rooted in constitutional soil. Since the inception of our state the power of a legislative body to govern its own internal workings has been viewed as essential to its functioning except as it may have been expressly constrained by the California Constitution. The fundamental charter of our state government was enacted by the people against a history of parliamentary common law. That law is implicit in the Constitution's structure and its separation of powers. As was said by the California Supreme Court over 100 years ago: "A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self preservation. The Constitution is not a grant, but a restriction upon the power of the Legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent, and impartial manner,

---

[2]Article IV, section 9 of the Constitution of 1849 provided that "Each house shall determine the rule of its proceedings . . . ." The present provision was enacted in 1966 and reenacted in 1972. (See 2 Deering's Constitutional Annot. (1974 ed.) p. 76.) The provisions of article IV, section 7, subdivision (a), which provide for the selection of officers was first enacted in 1879 as article IV, section 7. (*Ibid.*)

its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same." (*Ex parte D. O. McCarthy* (1866) 29 Cal. 395, 403; see also *Macmillan Co.* v. *Clarke* (1920) 184 Cal. 491, 498 [194 P. 1030, 17 A.L.R. 288]; *Hilborn* v. *Nye* (1911) 15 Cal.App. 298, 303 [114 P. 801].)[3]

*McCarthy* recognized as an integral part of this parliamentary common law the power of a house of the Legislature to "choose its own officers, and remove them at pleasure," to "establish its own rules of proceeding," and "[t]o be secret in its proceedings and debates." (*McCarthy, supra,* 29 Cal. at pp. 403-404.) However, it is unnecessary for us to found our decision on that law for these powers have been made an express part of the California Constitution.[4] They are to be found in article IV, sections 7 and 11 of the Constitution. The real parties claim that, with the exception of sections 9926 through 9929.5 and 9936 through 9937 of the Second part and (impliedly) the unqualified repealer of the related provisions in the First part (existing §§ 9027, 9028, 9030, 9031 and 9131)[5] each section of the Act facially violates these constitutional provisions. We agree with the claim.

---

[3]*McCarthy* had before it the question whether a legislative house, the Senate, had the power to investigate charges of bribery against its members, a matter not contained in the Constitution. *McCarthy* answered "yes." Petitioners argue that "some law made unto itself" includes a statute, thereby implying the superiority of a statute over an internal rule. The argument misses the context and hence the meaning of the phrase. The word "itself," in "some express law made unto itself," refers to the antecedent "legislative assembly." In *McCarthy* that was a house, the Senate. (*McCarthy, supra,* 29 Cal. at p. 403.) Thus, a "law made unto itself" is a law made by a *house* by rule. *McCarthy* says that a house is restricted in the regulation of its internal affairs only by the Constitution and rules which it itself has adopted. (*Ibid.*)

[4]The continuing vitality of the parliamentary common law was most recently recognized in the 1966 revision of our Constitution. Former article IV, section 23a, provided that "The Legislature shall provide for the selection of all officers, employees and attaches of both houses." This section was repealed by the constitutional revision of 1966. The selection of officers was placed in article IV, section 7. However, the express reference to employees and attaches was removed with the explanation that article IV, section 23a, arose as a restriction upon the inherent powers of the houses to select their employees. "The Legislature has inherent power to provide for the selection and compensation of employees, in absence of a constitutional regulation to the contrary [*Hilborn* v. *Nye* (1911) 15 Cal.App. 298, 303 . . . .] In 1956, the existing provisions replaced provisions which set limitations and restrictions on legislative employees and their compensation. The 1956 ballot argument indicates the amendment was made for the purpose of removing the then existing restrictions, rather than for the purpose of expressly granting the Legislature power to select such employees. The section was therefore deleted as unnecessary." (Cal. Const. Revision Com., Proposed Revision of the Constitution (1966) p. 54.) Notwithstanding this locus of power in the common parliamentary law, we would also locate the power to provide for the selection of employees and attaches in the rule-making power of a house over its proceedings.

[5]These sections parallel the sections of the Second part which we will find to be grammatically severable from the remaining sections of that part.

## I.

■ Article IV, section 7, subdivision (a), directs that "[e]ach house shall choose its officers and adopt rules for its proceedings."[6] Article IV, section 11, provides that the "Legislature or either house may by resolution provide for the selection of committees necessary for the conduct of its business . . . ."[7]

The Second part of the Act regulates the appointments of the Speaker of the Assembly and the President pro tempore of the Senate. (§§ 9910 and 9914.) It also seeks to regulate the appointment and powers of the standing, select, joint and interim committees of the houses. (§§ 9911, 9912, 9913, 9915, 9916, 9917, 9922, 9923 and 9924.) The Act would also regulate the method of adoption of rules for the conduct of the houses both generally and as applied to specific subject matters. (§§ 9920, 9921, 9925, 9930, 9931, 9932, and 9933.) It further provides that these statutory provisions may not be amended or modified except as permitted by the Act. (See §§ 9904 and 9905.) The First part of the Act repeals the existing provisions of the Government Code which relate to these subjects (§§ 9026, 9029, 9107, 9107.5, 9126, 9127, 9128, 9129, 9132, 9220, 9221, 9222, and 9223). These provisions of the Act manifestly invade one or more of the powers of the houses over their committees, staff and internal proceedings as expressly delegated to them by article IV, sections 7 and 11 of the Constitution.

### A.

■ ■ Petitioners respond that the Act is within a coordinate power of the people granted them by the Constitution, i.e., the initiative "power of the electors to propose statutes . . . and to adopt or reject them."

---

[6]Article IV, section 7, says: "(a) Each house shall choose its officers and adopt rules for its proceedings. A majority of the membership constitutes a quorum, but a small number may recess from day to day and compel the attendance of absent members.

"(b) Each house shall keep and publish a journal of its proceedings. The rollcall vote of the members on a question shall be taken and entered in the journal at the request of 3 members present.

"(c) The proceedings of each house and the committees thereof shall be public except as provided by statute or by concurrent resolution, when such resolution is adopted by a two-thirds vote of the members of each house, provided, that if there is a conflict between such a statute and concurrent resolution, the last adopted shall prevail.

"(d) Neither house without the consent of the other may recess for more than 10 days or to any other place."

[7]Article IV, section 11, appears to duplicate the power of the houses over their proceedings as provided in article VII. However, it has an additional purpose "to give the Legislature power to conduct necessary committee business during the period of adjournment." (See Cal. Const. Revision Com., Proposed Revision of Articles III to XXIV, *supra*, p. 35.)

(Art. II, § 8.)[8] ▮▮▮ This power is shared with the Legislature and the Governor. (See art. IV, §§ 8, 10; *Carlson* v. *Cory* (1983) 139 Cal.App.3d 724 [189 Cal.Rptr. 185].) A rule of resolution is solely the product of the house or houses which adopted it.[9] The petitioners claim that a statute is superior to a rule or resolution and hence may supersede and control the subject matters of the rule making powers vested in the two houses by article IV, sections 7 and 11. Thus, so the petitioners' argument goes, there is no conflict between the Act and the Constitution. The claim presupposes that these *subject matters* are among those which may be regulated by statute. Therein lies the fallacy.

The subjects of statutes are categorically different from the subjects of the rule-making powers of article IV, sections 7 and 11. The subjects of statutes are laws. (Art. IV, § 8: "The Legislature may make no law except by statute . . . ."; see *American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 708, 709 and fn. 20 [206 Cal.Rptr. 89, 686 P.2d 609].) The kinds of rules and principles which are subsumed under the statutory "law" are addressed to the world *outside* the Legislature. (See *INS* v. *Chadha* (1983) 462 U.S. 919, 955, fn. 21 [77 L.Ed.2d 317, 103 S.Ct. 2764]; cf. *American Federation of Labor* v. *Eu, supra,* at p. 712, fn. 23.) Conversely, the internal rules of the Legislature do not have the force of law except as they may bind the house which adopted them. (*Mullan* v. *State* (1896) 114 Cal. 578, 584 [46 P. 670]; cf. fn. 3, *ante*.) Since the subjects of statutory laws and rules of internal proceedings *categorically* differ, a statute may not control a rule of internal proceeding.

These subject matters are the prerogatives of different governmental entities. Laws, as expressed in statutes, are the prerogatives of the Legislature, together with the Governor, and of the electorate. Rules or resolutions which affect the selection of the officers of the houses or their rules of proceeding or rules for their committees or their employees are the exclusive prerogative of "[e]ach house" of the Legislature or the combined houses. (Art. IV, § 7, subd. (a).) The people's initiative statutory power, being limited to the subject matter of statutes, does not extend to these matters.

There is one exception to this separation of powers, and it underscores this reading. Article IV, section 7, subdivision (c) (a part of the rule-making

---

[8]We relegate to a footnote petitioners' additional argument that the Act is sanctioned by California Constitution, article IV, section 5. It provides that "[t]he Legislature shall enact laws to prohibit members of the Legislature from engaging in activities or having interests which conflict with the proper discharge of their duties . . . ." This section deals not with the proceedings of the Legislature but with the conduct of its individual members. It has no application here.

[9]Article IV, section 7, subdivision (a), encompasses a joint rule, i.e., a rule affecting the joint proceedings of *both* houses. A joint rule requires the concurrence of each of the affected houses. Some joint rules are also called resolutions. (See art. IV, § 11.)

section at issue), provides that "[t]he proceedings of each house and the committees thereof shall be public except as provided by *statute or* by *concurrent resolution* . . . adopted by a two-thirds vote . . . of each house, provided, that if there is a conflict between such a statute and concurrent resolution[10], the last adopted shall prevail." (Italics added.) This is the only constitutional provision which authorizes the *statutory* control of a rule or resolution of internal proceeding and that authority is subject to revocation by resolution. The unmistakable implication is that none other was intended.

In sum, the people through the electorate have been given the power to make statutes, i.e., the power to make *laws* for all the people, but not the power to make rules for the selection of officers or rules of proceeding or rules which regulate the committees or employees of either or both houses of the Legislature. These powers (with the exception noted) are exclusively the province of the houses affected by them.

### B.

■ Petitioners also defend the constitutionality of the Act by pointing to the apparent anomaly that the Legislature has in fact adopted statutes which purport to regulate the internal proceedings of its houses.[11]

Petitioners offer no reasons why this practice is legally significant. There are none. The *form* (statute or rule or resolution) chosen by a house to exercise its rulemaking power cannot preempt or estop a house from employing its *substantive* powers under article IV, sections 7 and 11.[12] A rule of internal proceeding made in the guise of a statute is nonetheless a *rule* "adopted" by the house and may be changed by an internal rule. "The enactment of statutes relating to internal proceedings was obviously accomplished by the voluntary participation of each of the two Houses. Thus each

---

[10]For purposes of this argument, there is no distinction between a rule and a resolution in that both are exclusively the products of the houses of the Legislature and need not meet the formalities of a statute.

[11]The houses have *not* uniformly followed rules embodied in statutes. (Compare Food & Agr. Code, § 4533, with the later adopted Joint Rule 36.7; Gov. Code, § 9170, with the later adopted Sen. Rule 10.5.)

[12]The houses have no doubt been encouraged to choose the statutory form for rule making because its parliamentary authority (Mason, Manual of Legislative Procedure (1979); see Assem. Rule 10, Sen. Rule 20) has told them that they may do so without precluding a subsequent change in the statute by *rule*. "The constitutional right of a state legislature to control its own procedure cannot be withdrawn or restricted by statute, but statutes may control procedure insofar as they do not conflict with the rules of the houses or with the rules contained in the constitution." (Mason, Manual of Legislative Procedure, *supra*, pt. 1, ch. 1, § 2, p. 35.) Pursuant to this advice, a statute adopted by the *Legislature* may govern an internal proceeding in the *absence* of a rule. It may not preclude a contrary rule.

House was essentially engaged in its rule-making function." (*Paisner* v. *Attorney General* (1983) 390 Mass. 593 [458 N.E.2d 734, 739-740].) A rule of proceeding adopted by the Legislature by statute is, notwithstanding its means of adoption or label, a rule or resolution within the provisions of article IV, sections 7 and 11. It is not the form by which the rule is adopted but its substance which measures its place in the constitutional scheme. The people wholly lack this power whatever the form of its application.

Nor could a house estop itself or a future house by use of the statutory form from adopting any rule the substance of which is within the powers exclusively delegated to it by the Constitution. "'The long indulgence in [a] custom cannot create a right in the legislature, or either house thereof, to do that which it has no power or authority to do.'" (*Special Assembly Int. Com.* v. *Southard* (1939) 13 Cal.2d 497, 509 [90 P.2d 304].) A house "has power to adopt any procedure and to change it at any time and without notice. It cannot tie its own hands by establishing rules which, as a matter of power purely, it cannot at any time change and disregard. Its action in any given case is the only criterion by which to determine the rule of proceeding adopted for that case." (*French* v. *Senate* (1905) 146 Cal. 604, 608 [80 P. 1031]; see *In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275].) A power conferred exclusively upon a house of the Legislature cannot be delegated. (*In re McGee* (1951) 36 Cal.2d 592 [226 P.2d 1] [jurisdiction to judge qualifications of members cannot be delegated]; cf. the limited exception now contained in art. IV, § 5.)

■ Lastly, the petitioners seek to trade upon an assumption about the extent of the legislative power of the people. They assume that the initiative power includes the whole of the legislative power within which they locate the rule-making power. The assumption is incorrect. "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." (Art. IV, § 1.) Such reserved powers are exclusively specified in article II, section 8, and are limited to that which has been specifically delegated. They do not include the power to regulate the internal workings of the houses. Accordingly, the provisions of the Second part of the Act which do (§ 9904, §§ 9910 through 9925 and §§ 9930 through 9935) and the repeal of the related existing law in the First part of the Act (§§ 9026, 9029, 9107, 9107.5, 9126, 9127, 9128, 9129, 9132, 9220, 9221, 9222, and 9223) are invalid as in conflict with the Constitution.

To accomplish the purposes attempted by the Act, a constitutional amendment is required. Only by means of an initiative constitutional amendment may the people modify or impinge upon the freedom of the Legislature to exercise its constitutionally granted powers.

## II.

■ Section 9934 is invalid for different reasons. It seeks to govern the *content* of future legislation by limiting the amount of monies appropriated for the support of the Legislature. It provides that "within 30 days following the enactment . . . the total amount of monies appropriated for the support of the Legislature, . . . shall be reduced by an amount equal to thirty percent of the total amount of monies appropriated for support of the Legislature for the 1983-84 fiscal year, and the amount so reduced shall revert to the General Fund. For each fiscal year thereafter, the total amount of monies appropriated . . . shall not exceed an amount equal to that expended for support in the preceding fiscal year" adjusted up or down by the percentage increase or decrease in the general fund spending for the same year.

Real parties argue that section 9934 runs afoul of the "familiar principle of law that no legislative board, by normal legislative enactment, may divest itself or future boards of the power to enact legislation within its competence." (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 929 [120 Cal.Rptr. 707, 534 P.2d 403]; see also *In re Collie, supra,* 38 Cal.2d at p. 398; *French* v. *Senate, supra,* 146 Cal. at p. 608.) We agree.

Neither house of the Legislature may bind its own hands or those of future Legislatures by adopting rules not capable of change. (*In re Collie, supra,* 38 Cal.2d at p. 398.) "[T]he power of the electorate to enact legislation by use of the initiative process is circumscribed by the same limitations as the legislative powers resting in the legislative body concerned." (*Mueller* v. *Brown* (1963) 221 Cal.App.2d 319, 324 [34 Cal.Rptr. 474], citations omitted; see also 1 Singer, Sutherland Statutory Construction (4th ed. 1985) § 4.09, p. 135.)

This principle has special application here. What is at issue is not the authority to amend a statute, however adopted, but the power to say what content a future statute may have. The authority to enact statutes which appropriate money for the support of the state government, including the Legislature, is set forth in article IV, section 12 of the California Constitution. It provides for the appropriation of such monies through the adoption of the budget bill. It also provides for special appropriations measures which may be adopted outside of the budget bill process. (Art. IV, § 12, subd. (c).) Although either vehicle may be used to provide for the support of the Legislature, the budget bill is the vehicle historically used for the adoption of the Legislative budget. (See, e.g., Stats. 1984, ch. 258, § 2.00, p. 39.)

The budget process takes special form. The Governor submits a budget bill accompanied by a budget document which supplies the budgetary detail

for the budget bill. (Art. IV, § 12, subds. (a) and (c); see Doubleday, Legislative Review of the Budget in Cal. (1967) pp. 26-28, 175-202 (hereafter cited as Leg. Rev. of the Budget).) The Legislature is given the power inter alia to "control the . . . enforcement of budgets. . . ." (Art. IV, § 12, subd. (e).)

Section 9934 limits the amount of monies that may be "appropriated" by statute for the support of the Legislature in *each* fiscal year beginning with the fiscal year 1984-1985. The limitation is based upon a formula tied to the budget bill enacted for the fiscal year 1982-1983. Section 9934 thus seeks to operate upon and condition the content of future statutes, appropriations statutes. In so doing it invades not only the *content* of the Governor's budget bill but displaces the process (budget and budget bill) by which article IV, section 12, commands the adoption and enforcement of the budget. It also affects any alternative means of appropriation by placing limits upon the content of any Legislative appropriations bill. By these means, section 9934 "divest[s] [the Legislature] of the power to enact legislation within its competence" and violates the specific injunctions of article IV, section 12 of the Constitution. (See *City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d at p. 929.) Since the Legislature is denied such a statutory power, so are the people.[13] For these reasons section 9934 is invalid.

## III.

This brings us to the question of severability. There remain a number of sections of the Act which have not been directly challenged by real parties as invalid for any of the reasons we have discussed. They relate inter alia to public meetings of the Legislature (§§ 9926, 9927 and 9928) and the public reporting of legislative expenditures (§§ 9936 and 9937) and by implication the repealed sections of the existing law (§§ 9027, 9028, 9030,

---

[13]The limitation imposed by section 9934 upon the content of a budget measure must be distinguished from the constitutional authorization to appropriate money by statute by measures other than the budget bill. That power is specifically recognized in article IV, section 12. It authorizes the Legislature and hence the people to provide by statute for a continuing appropriation to pay for some specified program. (See, e.g., *Railroad Commission* v. *Riley* (1923) 192 Cal. 54 [218 P. 415].) However, the power so recognized does not authorize the placement of a *legal* limit upon the power of the Legislature to enact future appropriations legislation.

Although as a practical fiscal matter, a statute containing a continuous appropriation may limit the Legislature's *financial choices* in other appropriations measures, such a limitation is not one imposed by *law*. (See Leg. Rev. of the Budget, *supra,* p. 182 et seq.) That is not the case here. The limitation mandated by section 9934 places legal limits upon the content of the legislation by which the Legislature is given the money to conduct its operations. That restriction exceeds the Legislature's own statutory power and hence exceeds the power of the people to do the same thing.

9031 and 9131). Real parties' claim is that these provisions are so intertwined with the invalid provisions of.the Act that they may not be severed therefrom.[14] On that point we disagree.

### A.

As the California Supreme Court has said with respect to initiatives, "The rule on severability is set forth in *In re Blaney* (1947) 30 Cal.2d 643, 655 [184 P.2d 892]: '. . . if the statute is not severable, then the void part taints the remainder and the whole becomes a nullity.'" (*Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 330 [118 Cal.Rptr. 637, 530 P.2d 605].) *Santa Barbara* also recognizes *Blaney*'s presumption of constitutionality, "fortified" in its case, as here, by a severability clause. (*Ibid.*) However, the presumption is subject to a number of tests.

Thus, *Santa Barbara,* following *Blaney,* posed the first test as grammatical. Severability "'*is possible and proper where the language of the statute is mechanically severable,* that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words. [Citations.] [W]here there is no possibility of mechanical severance, as where the language is so broad as to cover subjects within and without the legislative power, and the defect cannot be cured by excising any word or group of words, the problem is quite different and more difficult of solution.'" (*Santa Barbara Sch. Dist.* v. *Superior Court, supra,* 13 Cal.3d at pp. 330-331, italics in original, quoting from *In re Blaney, supra,* 30 Cal.2d 643, 655; see also Stern, *Separability and Separability Clauses in the Supreme Court* (1937) 51 Harv.L.Rev. 76, 106 (hereafter cited as Separability and Separability Clauses).) Severance is akin to diamond cutting; a correct cut plumbs natural lines of cleavage if there are such; an incorrect one produces only diamond dust. If a grammatical cut is not possible, if the language "is incapable of mechanical severance [it] must survive, if at all, as a wholly integrated enactment." (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 544 [178 Cal.Rptr. 568, 636 P.2d 532].)[15]

---

[14]Whether sections 9926, 9927, 9928, 9936 and 9937 in whole or in part may be constitutionally upheld as within or ancillary to the provisions of article IV, section 7, subdivision (c) are issues we need not and do not reach. Similarly, we do not reach the issue whether these sections may be enforced by initiative in the manner provided in sections 9929 and 9929.5 without violating the constitutional doctrine of separation of powers. We do assume arguendo for purposes of resolving the severability question that their validity rests directly or derivatively upon article IV, section 7, subdivision (c).

[15]A corollary to the grammatical test, rooted in limitations upon the judicial power (see, e.g., Code Civ. Proc., § 1858) is the fundamental principle that a court may not rewrite a statute to save its constitutionality. A court has no power to produce "a judicially reformed statute," one which is made constitutional only "by inserting qualifications and exceptions in the statutory language, . . ." (*In re Blaney, supra,* 30 Cal.2d at p. 655; *Mulkey* v. *Reitman*

 ██ ██ The Act, like the enactment considered in the *Santa Barbara* case, contains a severability clause.[16] The courts have uniformly applied the grammatical test to enactments, however adopted, which contain severability clauses. (See *Santa Barbara Sch. Dist.* v. *Superior Court, supra,* 13 Cal.3d at p. 331, fn. 6; *Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 190 [185 Cal.Rptr. 260, 649 P.2d 902]; *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 320 [152 Cal.Rptr. 903, 591 P.2d 1]; *City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d at p. 930; *In re Blaney, supra,* 30 Cal.2d at p. 653; *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 555 [171 P.2d 885]; cf. *In re Bell* (1942) 19 Cal.2d 488, 498 [122 P.2d 22]; *In re Portnoy* (1942) 21 Cal.2d 237, 242 [131 P.2d 1]; see also Separability and Separability Clauses, *supra,* at p. 117.) We do so here.[17]

The grammatical test is met by the sections at issue. As discrete sections of the Act they are grammatically complete and distinct. (See §§ 9926, 9927, 9928, 9936, 9937, 9929 and 9929.5; see also repealed §§ 9027, 9028, 9030, 9031, and 9131.) Thus, the only question of severance relates to the remaining sections as a whole.

### B.

 This tenders a second test of severance, the sections to be severed, though grammatically distinct, must be capable of independent application. (See *Metromedia, Inc., supra,* 32 Cal.3d at pp. 190-191.) Thus *Santa Barbara, supra,* 13 Cal.3d at page 331, says that "[s]uch a [severability]

---

(1966) 64 Cal.2d 529, 544 [50 Cal.Rptr. 881, 413 P.2d 825]; see also *French* v. *Teschemaker* (1864) 24 Cal. 518, 554; *People* v. *Perry* (1889) 79 Cal. 105, 114-115 [21 P. 423]; *Estate of Mahoney* (1901) 133 Cal. 180, 182 [65 P. 389]; *City of Los Angeles* v. *Lewis* (1917) 175 Cal. 777, 780-784 [167 P. 390]; *Mordecai* v. *Board of Supervisors* (1920) 183 Cal. 434, 442-446 [192 P. 40]; *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365-367 [5 P.2d 882].) A severability clause cannot change this rule. A severability statute may not be used "to delegate to the courts the task of rewriting the statute, . . ." (*In re Blaney, supra,* at p. 655.)

[16]Section 9906 provides: "If any provision of this chapter, or the application of any such provision to any person or circumstance, shall be held invalid, the remainder of this chapter to the extent it can be given effect, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and to this end the provisions of this chapter are severable."

[17]The grammatical test is implied from the language of the severability clause. Section 9906 says that if "the application of any . . . provision [of the Act] to any person or circumstances, shall be held invalid, the remainder of this [Act may be severed] to the extent it can be given effect; . . ." "The meaning of language is to be found in its applications." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246].) If the application is invalid, so is the language which is its progenitor. Thus, an "application" of the enactment, to be validly severed, must be an application of the unsevered language.

clause plus the ability to mechanically sever the invalid part while normally allowing severability, does not conclusively dictate it. The final determination [inter alia] depends on whether 'the remainder . . . is complete in itself. . . .' [Citations.]" This might be called a functional test of severability. This too is contained in the severability clause. Section 9906 says that whatever language is left after severance must be capable of being "given effect." "[S]uch a clause does not require that we salvage provisions which even though valid are not intended to be independently operative." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 152-153 [130 Cal.Rptr. 465, 550 P.2d 1001].)

This means several things. The remainder must "'constitute[] a completely operative expression of the legislative intent . . . .'" (*Santa Barbara, supra,* 13 Cal.3d at p. 331.) The part to be severed must not be part of a partially invalid but unitary whole. The remaining provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations. They must be capable of separate enforcement.

This test is also met here. The public meeting and public report sections are complete in themselves. They have an independent application wholly apart from and unaided by the provisions of the Act which invalidly regulate the internal proceedings of the houses of the Legislature. Moreover, the assumed justification (cf. fn. 14, *ante*) of the severed sections rests upon an independent policy of our Constitution embodied in article IV, section 7, subdivision (c).

### C.

There is a third test. As *Santa Barbara, supra,* 13 Cal.3d at page 331, said in applying the severability clause at issue here to an initiative, the "'remainder [must not only be] complete in itself [but] *would have been adopted by the legislative body had [it] foreseen the partial invalidation of the statute.'*" (Italics added; quoting from *In re Bell, supra,* 19 Cal.2d 488, 498; see also *Metromedia, Inc., supra,* 32 Cal.3d at p. 191; *Sonoma County Organization of Public Employees, supra,* 23 Cal.3d at p. 320; *In re Blaney, supra,* 30 Cal.2d at p. 656; Separability and Separability Clauses, *supra,* at pp. 79-80.) This test logically requires that the remaining provisions must be viewed from the perspective of the enacting body.

Although the initiative process differs from the legislative process in that it does not permit amendments and a collective weighing of the relation of the parts of the enactment, it is nonetheless subject to the severability doctrine. (See *Santa Barbara, supra,* 13 Cal.3d 315.) However, the pro-

visions to be severed must be so presented to the electorate in the initiative that their significance may be seen and independently evaluated in the light of the assigned purposes of the enactment. The test is whether it can be said with confidence that the electorate's attention was sufficiently focused upon the parts to be severed so that it would have separately considered and adopted them in the absence of the invalid portions.

■■■ This test is also met here.

The Act is preceded by policy sections which focus the attention of the electorate upon the issue of secrecy in government. Thus section 9902, in stating the purposes of the chapter, says "(e) No system of legislative voting which serves to deny or obscure the people's right to know how their representatives vote should be permitted in the Legislature." Similarly, subdivision (f) thereof says that "The people have the right to have notice of, see, and express their feelings on all proposed changes in the laws, including those changes proposed in reports of conference committees, and any knowing and willful violation of these rights should be a criminal offense . . . ." We conclude that by this means, sufficient attention was drawn to the issue of secrecy to identify it as worthy of independent consideration. We conclude that had the electorate been separately given these provisions that they would have adopted them. There is no basis to suppose a differential popularity concerning these provisions of the Act.

It is argued, however, that sections 9936 and 9937 which provide for reports to the public concerning expenditures from the contingent funds of the Legislature and an independent public audit of them are inextricably linked to the provisions we have held invalid (§§ 9930 through 9935) which control the use of contingent funds and limit the appropriations for support of the Legislature. This tenders a question whether these provisions were so presented to the electorate that they would have been identified as matters of governmental secrecy or as matters linked to the invalid limitations on legislative appropriations and expenditures. If solely the latter, they would be inseverable. The matter is equivocal as to choice. In this context we think the deciding factor is that there is a declared policy against the secrecy of legislative proceedings in the Act which provides a common linkage between these provisions. That fortifies our conclusion that had they been presented alone the electorate would have voted for them as a unit.

■■■ The conclusion we have reached necessarily requires that we also sever the provisions of the First part of the Act which repeal the sections of the Government Code which are in conflict with the remaining sections. That follows from the provisions of article IV, section 7, subdivision (c), which provides as to public proceedings that if there is a conflict between

a statute and a previously adopted resolution (here in the form of a statute) "the last adopted shall prevail." It also follows as a logical necessity when severed provisions replace existing provisions. (See Note, *Statutory Construction: Effect Where Repealing Act is Unconstitutional in Part* (1941) 30 Cal.L.Rev. 108.)

The validity of these provisions, apart from the issue of severability, has not been put in issue and nothing we say implicates such a conclusion. The provisions which we have severed may be repealed or replaced or rendered invalid by action of the Legislature pursuant to article IV, section 7, subdivision (c).[18]

## DISPOSITION

A peremptory writ shall issue directing the superior court to set aside its judgment declaring invalid the repeal of existing Government Code sections 9027, 9028, 9030, 9031 and 9131 on the First part and invalidating the sections 9926 through 9929.5 and 9936 through 9937 of the Government Code as added by the Second part of the Act and the policy provisions, severability clause and effective date necessarily linked to them. In all other respects the judgment declaring the invalidity of the "First" and "Second" parts of the Act is affirmed. The alternative writ is discharged.

## APPENDIX

"First—That Sections 9026, 9027, 9028, 9029, 9030, 9031, 9107, 9107.5, 9126, 9127, 9128, 9129, 9131, 9132, 9220, 9221, 9222, and 9223 of the Government Code are repealed.
Second—That Chapter 8 (commencing with Section 9900) is added to Part I of Division 2 of Title 2 of the Government Code, to read:

Chapter 8
LEGISLATIVE REFORM
Article 1
GENERAL

§ 9900. Short title
This chapter shall be known and may be cited as the "Legislative Reform Act of 1983."

---

[18]If this power is exercised so as to repeal or replace or create a conflict with sections 9926, 9927, 9928, 9936 and 9937 there would be nothing left upon which the enforcement provisions, sections 9929 and 9929.5, could act. At that point the entire Act would become a nullity.

§ 9901. Findings and declaration.

The people find and declare:

(a) All citizens of the State are entitled to full and effective representation by their elected representatives.

(b) In recent years spending for the support of the Legislature has increased at a rate greatly exceeding the growth in spending for most other state functions, severely damaging the image and credibility of the Legislature with the people of California.

(c) In the absence of reasonable oversight and constraints, powerful individual lawmakers exercise virtually exclusive control over legislative spending, depriving the people of California and other lawmakers of an effective means of discovering how these monies are being spent or of judging the propriety of those expenditures.

(d) The distribution of funding, staff, and informational resources in the Legislature according to predominantly partisan criteria has greatly hindered the ability of minority party representatives to provide effective legislative representation.

(e) The concentration of power in the office of Speaker of the Assembly and, to a lesser extent, in the office of President pro Tempore of the Senate, has created a system of patronage and punishment through which a single legislator, accountable only to the people of a single legislative district, is able to wield greatly disproportionate influence over the laws of California.

(f) The growth in abusive voting practices in the Legislature and its committees has worked to deprive the people of their right to monitor the performance of their legislative representatives and respond accordingly.

(g) The Legislature's refusal to adhere to statutory and traditional notice and publication requirements for committee hearings and reports of conference committees has deprived the public of its right to make effective input into the legislative process.

§ 9902. Purposes of chapter

The people enact this chapter to accomplish the following purposes:

(a) Appropriations for the support of the Legislature should be reduced by thirty percent from 1983-84 budgeted levels and future growth in legislative spending should be limited to a rate commensurate with the growth of state government spending in general.

(b) Control over legislative spending should be removed from the hands of powerful individual lawmakers and there should be established a system of independent monitoring of legislative spending practices and increased disclosure of legislative spending levels.

(c) All Members of the Legislature, regardless of partisan affiliation, should be provided with equal opportunity and resources to effectively serve their constituents. The minority party or parties in each house of the Legislature should be provided with resources, funding, and a policy-making voice proportionate with their numbers in that house in order to achieve the end of fair and effective representation for all.

(d) No single Member of the Legislature should be given extraordinary power to influence the course of legislation nor the power to punish other members for the good faith exercise of their free will and judgment on behalf of their constituents.

(e) No system of legislative voting which serves to deny or obscure the people's right to know how their representatives vote should be permitted in the Legislature.

(f) The people have the right to have notice of, see, and express their feelings on all proposed changes in the laws, including those changes proposed in reports of conference committees, and any knowing and willful violation of these rights should be a criminal offense and the laws passed in violation thereof invalidated.

§ 9903. Construction of chapter

This chapter shall be liberally construed to accomplish its purposes.

§ 9904. Amendment or repeal of chapter; procedures

This chapter may be amended only by the procedures set forth in this section. If any portion of subsection (a) is declared invalid, then subsection (b) shall be the exclusive means of amending or repealing this chapter.

(a) This chapter may be amended only to further its purposes and only by statute, passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring and signed by the Governor, if at least 20 days prior to passage in each house the bill in its final form has been printed and made available for public inspection.

(b) This chapter may be amended or repealed by a statute that becomes effective only when approved by the electors.

### § 9905. Imposition of additional requirements; law governing
Nothing in this chapter shall prevent the Legislature from imposing additional requirements on itself if the requirements do not conflict with the purposes of this chapter. If any act of the Legislature conflicts with the provisions of this chapter, this chapter shall prevail.

### § 9906. Severability
If any provision of this chapter, or the application of any such provision to any person or circumstance, shall be held invalid, the remainder of this chapter to the extent it can be given effect, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and to this end the provisions of this chapter are severable.

### § 9907. Effective date
This chapter shall go into effect immediately. Notwithstanding any other provision of law, all changes in the structure or operation of the Legislature required by this chapter, including but not limited to the adoption of rules in accordance with Section 9920 and 9921, the reorganization of the Senate Committee on Rules, the Assembly Committee on Rules, the Joint Rules Committee, and all standing, special, select, and joint committees of the Legislature, including the reallocation of staff resources, in accordance with Sections 9911, 9915, 9917, 9922, 9923, and 9924, and the reduction in funding for support of the Legislature pursuant to Section 9934, shall be implemented upon the first meeting of the Legislature in regular or special session subsequent to enactment of this chapter.

Article 2

LEGISLATIVE POWERS AND DUTIES

### § 9910. Speaker of the Assembly .
The Speaker is responsible for the efficient conduct of the legislative and administrative affairs of the Assembly.

The Speaker shall be elected upon organization of the Assembly at the beginning of each regular or special session and shall serve until adjournment sine die of that session, unless removed pursuant to Section 9173 and a successor chosen pursuant to the rules of the Assembly.

### § 9911. Assembly Committee on Rules
There is hereby created in the Assembly a Committee on Rules, which shall consist of the Speaker, who shall be the chairman of the committee, and six other Members of the Assembly, three to be elected by the party having the largest number of Members in the Assembly and three to be elected by the party having the second largest number of Members. The Assembly Committee on Rules has a continuing existence and may meet and act during sessions of the Legislature or any recess thereof and in the interim periods between sessions. The committee shall have all the powers and authority provided in Section 11 of Article IV of the Constitution of California, in this article, and as provided in the rules of the Assembly.

### § 9912. Powers of the Assembly Committee on Rules
(a) The Assembly Committee on Rules shall have the power:

(1) To assign all bills to Assembly committees.

(2) To appoint the Chairmen and Vice-chairmen of all other Assembly Committees, provided that the Chairman and Vice-Chairman of each committee must be members of different parties.

(3) To have general direction over the Assembly Chamber and rooms set aside for the use of the Assembly, including the rooms for use by Members as private offices.

(4) To allocate all funds, staffing, and other resources necessary for the effective operation of the Assembly. Except as provided otherwise by affirmative recorded vote of two thirds of the total membership of the committee, all funds, staffing, and resources shall be allocated proportionately by party.

(5) To exercise such other powers and perform such duties as may be provided by statute enacted in accordance with the provisions of this chapter, or in the rules of the Assembly.

(b) Notwithstanding any other provision of law or rule, neither the Chairman nor any member or agent of the Assembly Committee on Rules shall have the power to perform any action on behalf of the committee, including but not limited to the making of contracts, the payment of claims, the allocation of office space, or the hiring or dismissal of staff, without the express authorization of two thirds of the total membership of the committee. Such authorization shall apply only to the matter or matters under immediate consideration.

§ 9913. Appointments by the speaker; confirmation by Assembly Committee on Rules

Notwithstanding any other provision of law, all statutory appointments delegated to the Speaker of the Assembly are subject to confirmation by the Assembly Committee on Rules, two thirds of the membership thereof concurring.

§ 9914. President pro tempore of the senate

The President pro Tempore is responsible for the efficient conduct of the legislative and administrative affairs of the Senate.

The President pro Tempore shall be elected upon organization of the Senate at the beginning of each regular or special session and shall serve until adjournment sine die of that session, unless removed pursuant to Section 9173 and a successor chosen pursuant to the rules of the Senate.

§ 9915. Senate Committee on Rules

There is hereby created in the Senate a Committee on Rules, which shall consist of the President pro Tempore of the Senate, who shall be the chairman of the committee, and four other Members of the Senate, two to be elected by the party having the largest number of Members in the Senate and two to be elected by the party having the second largest number of Members. The Senate Committee on Rules has a continuing existence and may meet and act during sessions of the Legislature or any recess thereof and in the interim periods between sessions. The committee shall have all the powers and authority provided in Section 11 of Article IV of the Constitution of California, in this article, and as provided in the rules of the Senate.

§ 9916. Powers of the Senate Committee on Rules

(a) The Senate Committee on Rules shall have the power:

(1) To assign all bills to Senate committees.

(2) To appoint the Chairmen and Vice-chairmen of all other Senate committees, provided that the Chairman and Vice-chairman of each committee must be members of different parties.

(3) To have general direction over the Senate Chamber and rooms set aside for the use of the Senate, including the rooms for use by Members as private offices.

(4) To allocate all funds, staffing, and other resources necessary for the effective operation of the Senate. Except as decided otherwise by affirmative recorded vote of two thirds of the total membership of the committee, all funds, staffing, and resources shall be allocated proportionately by party.

(5) To exercise such other powers and perform such duties as may be provided by statute enacted in accordance with the provisions of this chapter, or in the rules of the Senate.

(b) Notwithstanding any other provision of law or rule, neither the Chairman nor any member or agent of the Senate Committee on Rules shall have the power to perform any action on behalf of the committee, including but not limited to the making of contracts, the payment of claims, the allocation of office space, or the hiring or dismissal of staff, without the express authorization of two thirds of the membership of the committee. Such authorization shall apply only to the matter or matters under immediate consideration.

§ 9917. Joint rules committee

(a) There is hereby created the Joint Rules Committee which shall be comprised of the combined membership of the Assembly Committee on Rules and the Senate Committee on Rules as specified in this article and two other Members of the Senate, one to be elected by the party having the largest number of Members in the Senate and one to be elected by the party having the second largest number of Members. The committee herein created has a continuing existence and may meet and act during sessions of the Legislature or any recess thereof and in the interim periods between sessions. The committee shall have all the powers and authority provided in Section 11 or Article IV of the Constitution of California, this

title, and in the joint rules of the Legislature. Any action of the committee shall require an affirmative vote of not less than a majority of the Senate members and a majority of the Assembly members of the committee, except that any action which involves or anticipates the expenditure or allocation of funds shall require an affirmative vote of at least two thirds of the Senate members and two thirds of the Assembly members. Any reference in any code or statute to the Joint Committee on Legislative Organization shall be deemed a reference to the Joint Rules Committee.

(b) Notwithstanding any other provision of law or rule, neither the Chairman nor any member or agent of the Joint Rules Committee shall have the power to perform any action on behalf of the committee, including but not limited to the making of contracts, the payment of claims, the allocation of office space, or the hiring or dismissal of staff, without the express authorization of two thirds of the membership of the committee. Such authorization shall apply only to the matter or matters under immediate consideration.

### Article 3
#### LEGISLATIVE RULES AND PROCEDURES

§ 9920. Rules

Each house of the Legislature shall adopt rules for its proceedings for each regular and special session by resolution adopted by an affirmative recorded vote of two thirds of the membership of the house in question. No rule of either the Senate or Assembly shall be amended except by resolution adopted by an affirmative recorded vote of two thirds of the Members of that house. Any standing rule of either house may be suspended temporarily by a vote of two thirds of the Members of that house present and voting; provided, that in no case may a rule be suspended in the absence of a quorum. Any such temporary suspension shall apply only to the matter under immediate consideration, and in no case shall it extend beyond an adjournment.

§ 9921. Joint rules

The Senate and Assembly shall adopt rules for their joint proceedings for each regular and special session by resolution adopted by an affirmative recorded vote of two thirds of the membership of each house. No joint rule so adopted may be amended except by resolution adopted by an affirmative recorded vote of two thirds of the membership of each house. The Senate and Assembly may provide for temporary suspension of a joint rule by a single house upon the affirmative recorded vote of two thirds of the Members of that house; provided, that the temporary suspension shall apply only to the matter under immediate consideration, and in no case shall it extend beyond an adjournment.

§ 9922. Standing committees

All standing committees of both the Senate and the Assembly, except the Senate Committee on Rules and the Assembly Committee on Rules, shall be created and the size and jurisdiction thereof established through the adoption of or amendment to the rules of the respective houses by resolution, two thirds of the membership of the house in question concurring. Committee membership shall be determined in the following manner:

(a). The membership of each committee shall be proportional to the partisan composition of the house in question.

(b). Majority party members of each committee shall be selected by the majority party in a manner to be determined by the party caucus in each house.

(c). Minority party members of each committee shall be selected by the minority party or parties, in a manner to be determined by the party caucus or caucuses in each house.

(d). The Assembly Committee on Rules and the Senate Committee on Rules shall provide for the necessary and reasonable expenses of all committees of their respective houses pursuant to the provisions of Sections 9912 and 9916.

(e). The majority party in each house shall be that party with the largest number of members in that house. Each other party with membership in the house shall be a minority party.

§ 9923. Special and select committees; subcommittees

No special or select committees nor any subcommittee shall be established in either the Senate or the Assembly except by affirmative vote of two thirds of the Committee on Rules of the house in question. Membership of special or select committees or subcommittees shall

be determined according to the provisions of Section 9922. For purposes of this title, "special" and "select" committees or subcommittees include all committees or subcommittees which are not standing committees of either house or joint committees of the two houses.

§ 9924. Joint committees

No joint committee shall be established except by passage of concurrent resolution, two thirds of the membership of each house concurring. The membership of each joint committee shall be allocated equally between the Senate and the Assembly, and the delegation from each house shall be chosen pursuant to the procedures set forth in Section 9922.

§ 9925. Member voting

Each house of the Legislature shall provide in its rules for appropriate voting procedures on the floor and in committees or subcommittees; provided, that no member shall be allowed to cast a vote for another member, nor shall any member be allowed to change his or her vote or add a vote to the roll after the vote is announced, without the consent of four fifths of the membership of the house, nor shall any vote be taken in any committee or subcommittee of either house in the absence of a quorum, except a vote to adjourn.

§ 9926. Open and Public Meetings; public notice

Except as otherwise provided in this article, all meetings of the Assembly and Senate and the committees and subcommittees thereof, and of any conference committee, shall be open and public and all the proceedings shall be conducted openly so that the public may remain informed. All such meetings shall be held only after full and timely notice to the public published in the Journal at least two working days prior to the hearing unless longer notice is required by the Joint Rules of the Senate and Assembly, except notice may be dispensed with on extraordinary occasions by three fifths affirmative recorded vote of the house in question.

§ 9927. Executive sessions

Nothing contained in this article shall be construed to prevent the Assembly or the Senate or a committee or subcommittee thereof, except a conference committee, from holding executive sessions to consider matters relating to the appointment, employment or dismissal of a public officer or matters affecting the safety and security of the State Capitol or Members of the Legislature, its staff and employees. Members of the Assembly or the Senate shall not be prevented from meeting privately in caucus with members of their own political party.

§ 9928. Conference committees; reports; adoption

Notwithstanding any other provision of law, no member of the Senate or the Assembly shall sign a conference committee report unless a full and public meeting of the conference committee has been held in accordance with the provisions of Section 9926. No report of a conference committee shall be adopted by either house of the Legislature until the same, with amendments, has been printed and made available to the public for a minimum of two days, except that a house may dispense with this requirement by rollcall vote entered in the journal, two thirds of the membership concurring. Any conference report adopted in violation of this provision shall be void.

§ 9929. Violations; misdemeanor

Each member of the Legislature who attends a meeting of the Assembly, the Senate, or any committee or subcommittee thereof where action is taken in violation of Section 9926 with knowledge that the meeting is in violation thereof, or who signs a conference report in knowing violation of Section 9928, is guilty of a misdemeanor.

§ 9929.5. Mandamus; injunction; declaratory relief

Any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the Legislature or to determine the applicability of this chapter to actions or threatened future action of the Legislature.

Article 4
LEGISLATIVE FUNDS AND ADMINISTRATION

§ 9930. Legislative contingent funds

All appropriations for contingent expenses of the Legislature and committees thereof shall be deposited in and credited to the following funds, which funds are created in the State Treasury:

(a) Appropriations for the contingent expenses of the Senate and committees thereof shall be deposited in the Senate Contingent Fund, and shall be disbursed under or pursuant to the direction of the Senate Committee on Rules in accordance with the provisions of this chapter.

(b) Appropriations for the contingent expenses of the Assembly and committees thereof shall be deposited in the Assembly Contingent Fund, and shall be disbursed under or pursuant to the direction of the Assembly Committee on Rules in accordance with the provisions of this chapter.

(c) Appropriations for the contingent and joint expenses of the Senate and Assembly and committees thereof shall be deposited in the contingent funds of the Senate and Assembly, and shall be disbursed under or pursuant to the direction of the Joint Rules Committee in accordance with the provisions of this chapter.

§ 9931. Disbursements from Senate Contingent Fund and Assembly Contingent Fund

Except as provided by affirmative recorded vote of two thirds of the membership of the Rules Committee having powers of direction under Section 9930, all disbursements from the Senate Contingent Fund and the Assembly Contingent Fund shall be divided proportionately according to the partisan composition of the house in question.

§ 9932. Disbursements from Contingent Funds of the Senate and Assembly

No disbursements shall be made from the Contingent Funds of the Senate and Assembly except as provided by vote of the Joint Rules Committee, two thirds of the total membership thereof concurring.

§ 9933. Disbursement of money appropriated for legislative printing

Any money appropriated for legislative printing shall be disbursed under or pursuant to the direction of the Senate or Assembly as provided in the rules of the Senate or Assembly or their joint rules, in accordance with the provisions of Sections 9931 and 9932.

§ 9934. Limits upon public expenditure

Notwithstanding any other provision of law, within 30 days following the enactment of this chapter, the total amount of monies appropriated for the support of the Legislature, including but not limited to all monies appropriated to the Senate Contingent Fund, the Assembly Contingent Fund, the Contingent Funds of the Senate and Assembly, for legislative printing, and for aids to the Legislature as described in part 2 of this title, shall be reduced by an amount equal to thirty percent of the total amount of monies appropriated for support of the Legislature for the 1983-84 fiscal year, and the amount so reduced shall revert to the General Fund. For each fiscal year thereafter, the total amount of monies appropriated for support of the Legislature shall not exceed an amount equal to that expended for support in the preceding fiscal year, adjusted and compounded by an amount equal to the percentage increase or decrease in state General Fund spending for that fiscal year.

§ 9935. Continuous availability of funds; special accounts

Except as described in Section 9934 and this Section, appropriations deposited in and credited to the Senate Contingent Fund, the Assembly Contingent Fund, or the Contingent Funds of the Senate and Assembly, shall be continuously available without regard to fiscal years. Appropriations made at extraordinary or special sessions for the expenses of said sessions shall be maintained as separate accounts within the particular funds and shall be available for expenditure for such purpose for the duration of said sessions, and the unexpended balance of any such appropriation shall revert to the General Fund upon the adjournment sine die of the special session or sessions for which it was appropriated.

§ 9936. Reports to public on expenditures made from contingent funds; contents

(a) For the periods beginning December 1, March 1, June 1, and September 1 of each year, the Assembly Committee on Rules, Senate Committee on Rules, and the Joint Rules Committee shall quarterly issue a report to the public on expenditures made from the contingent fund subject to their direction and control. The report shall include, but need not be limited to, a listing of total expenditures for each member and committee of the Legislature in the following categories:

(1) Out-of-state travel and living expense reimbursement and in-state travel and living expense reimbursement.

(2) Automotive expenses.

(3) Rent

(4) Telephone.

(5) Postage.

(6) Printing.

(7) Office supplies.

(8) Newsletters.

(9) Per diem for attendance at legislative sessions,

(10) Staff salaries and expenses.

(11) Contracts entered into with any other party

(b) Each report shall be completed, published, and made available to the public within 30 calendar days following the completion of the reporting period.

(c) For the period ending on November 30 of each year, the Assembly Committee on Rules, Senate Committee on Rules, and the Joint Rules Committee shall annually issue a report to the public on the expenditures made from the contingent fund subject to their direction and control. The report shall include, but need not be limited to, a listing of total expenditures for each Member and committee of the Legislature in the categories described in subdivision (a). Each report shall be completed, published, and made available to the public within 90 calendar days following the completion of the reporting period.

§ 9937. Independent audit of contingent funds

The Joint Rules Committee shall annually contract for an independent audit of the revenues and expenditures, for each fiscal year, from the Assembly Contingent Fund, Senate Contingent Fund, and the Contingent Funds of the Assembly and Senate. The organization performing the audit shall be subject to approval by the Fair Political Practices Commission. The audit shall include, but need not be limited to, an evaluation of the accuracy of the expenditures described in Section 9936 and an evaluation of the effectiveness of the internal auditing procedures of the individual rules committees.

The audit shall be completed and made available to the public within 180 calendar days following the completion of the fiscal year for which the audit is performed.''