128 Cal.Rptr.2d 320 (2002)
104 Cal.App.4th 598
BRONCO WINE COMPANY et al., Petitioners,
v.
Manuel R. ESPINOZA, as Interim Director, etc., et al., Respondents;
Napa Valley Vintners Association, Interveners.
No. C037254.
Court of Appeal, Third District.
December 18, 2002.
As Modified on Denial of Rehearing January 16, 2003.
Review Granted April 16, 2003.
*322 Bill Lockyer, Attorney General, David S. Chaney, Senior Assistant Attorney General, Damon M. Connolly, Miguel A. Neri, Supervising Deputy Attorneys General, Terry Senne, Deputy Attorney General, for Respondents.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Jerome B. Falk, Jr. and Steven L. Mayer, San Francisco; Ropes & Gray, Peter M. Brody and Kelly B. Kramer, Washington, Dist. of Columbia, for Petitioners.
Keker & Van Nest, John W. Keker, Henry C. Bunsow, James M. Emery, Ragesh K. Tangri, San Francisco, and Daniel Purcell, for Intervenor.
*321 BLEASE, Acting P.J.
This proceeding arises out of an original petition for writ of mandamus filed in this court by stipulation of the parties.[1] *323 Petitioners, Bronco Wine Company and Barrel Ten Quarter Circle, Inc. (hereafter Bronco), seek a writ of mandate prohibiting respondents Department of Alcoholic Beverage Control and Manuel R. Espinoza, the Interim Director of that Department, from enforcing Business and Professions Code section 25241,[2] with respect to wines bearing Bronco's federally approved labels. Intervenor Napa Valley Vintners Association (Intervenor) joins with respondents. We issued an alternative writ and pursuant to the parties' consent, granted a stay of enforcement of section 25241.
At issue are the brand names that appear on labels of Bronco wine. A brand name is distinguished from an appellation of origin, which states the origin of the grapes used in making the wine. Section 25241 proscribes the use of a brand name on "wine produced, bottled, labeled, offered for sale or sold in California ... on any label, packaging material, or advertising," that uses the word "Napa" or the name of any federally recognized sub-appellation located entirely within Napa County, or any "similar name ... that is likely to cause confusion as to the origin of the wine," unless the wine qualifies under federal law for the appellation of origin Napa County and the appellation of origin is specified on the label, packaging material, or advertising. Section 25241 thus ties the requirements for a brand name to the federal requirement for an appellation of origin, that a specified percentage of the grapes contained in the bottle must come from the viticultural area suggested by the appellation.
Section 25241 prohibits the use of the brand names Napa Ridge, Rutherford Vintners, and Napa Creek Winery on the Bronco labels because the grapes used in producing the wines did not come from Napa County although the labels on these wines include a correct appellation of origin below the brand name disclosing the place where the grapes used to produce the wine were grown.
Bronco challenges the constitutionality of section 25241 as applied to its federally approved wine labels, contending that, as to wine destined for sale in interstate and foreign commerce, the statute is preempted by federal law.[3] The respondents do not challenge the validity of Bronco's federal labels, the certificates of label approval which grant Bronco the right to place the challenged brand names on its wine, or the federal regulations pursuant to which the labels were authorized.[4] Rather, respondents *324 claim the state and federal laws share the same purpose and therefore state law is not preempted because it does not stand as an obstacle to fulfillment of the purpose of the federal statute. Intervenor Napa Valley Vintners Association claims the federal scheme contemplates concurrent regulation which leaves the states free to impose greater restrictions in order to achieve a common end. We disagree with both claims.
The federal law sets forth a complete system for the regulation of the interstate sale of wine. It requires that such wine bear a federal label pursuant to a certificate of approval. The federal law governs the content of both appellations of origin and brand names on the label. It permits the concurrent state regulation of appellations of origin but not of brand names. Bronco's federal right to use its brand names in interstate commerce stems from compliance with a grandfather clause in this law which requires that its labels show the appellation of origin.
Accordingly, we shall conclude that, as applied to the labels on bottled wine destined for shipment into interstate and foreign commerce, section 25241 is preempted by federal regulations and federal certificates of label approval since section 25241 prohibits precisely that which the federal law permits. We further find that, because the application of section 25241 to interstate and foreign commerce is not severable from its intra state application, section 25241 is void in its entirety.
We will grant a peremptory writ of mandate directing respondents not to enforce Business and Professions Code section 25241.[5]

Factual and Procedural Background
Except as noted, the relevant facts are not in dispute.
Bronco Wine Company is a winery specializing in, according to Bronco, "premium wines at affordable prices." Barrel Ten Quarter Circle, Inc. (Barrel Ten), is a separate company although ownership and management of the two companies overlap.
Some of Bronco's wine is bottled at its wineries in Ceres and Sonoma County; other Bronco wines are bottled under contract by petitioner Barrel Ten at a recently completed winery in Napa, California.
Bronco's wines are bottled under a variety of labels. All of their labels have been reviewed and approved by federal regulators and have been issued federal certificates *325 of label approval permitting their use in interstate commerce. Bronco sells its wine under a number of brand names, including the brand names "Napa Ridge," "Rutherford Vintners" and "Napa Creek Winery." Each of the labels lists the source of the grapes by the appellation of origin set forth below the brand name.[6]

Bronco acquired these three brand names, and the labels on which they appeared, from predecessor owners. The brand name "Napa Creek Winery," introduced in 1981, was acquired by Bronco in 1993. "Rutherford Vintners," which originated in the early 1970s, was acquired by Bronco in 1994. "Napa Ridge," which Bronco acquired in January 2000 from Beringer Wine Estates, has been in trade since the early 1980s.
Bronco and its predecessors-in-interest have used these brand names with wines from a variety of appellation areas in California, both before and after Bronco's acquisition of the brands. Beringer, the prior owner of "Napa Ridge," obtained label approvals for use of "Napa Ridge," and used that brand name with wines made from grapes grown in the Central Coast, North Coast, and Lodi appellation areas, as well as from the Napa Valley appellation. The labels on these wines included a correct appellation of origin disclosing the place where the grapes used to produce the wine were grown.
Bronco invested significant sums of money when it acquired, promoted, and advertised the "Napa Ridge," "Rutherford Vintners" and "Napa Creek Winery" labels and brand names. Bronco's annual sales of wines under labels bearing these three brand names collectively amount to approximately 300,000 cases, representing annual gross revenues of approximately $17 million. Of this amount, approximately 28 percent are attributable to sales within California and approximately 72 percent are attributable to sales outside California.
Pursuant to an inquiry by Bronco, the Department of Alcoholic Beverage Control advised Bronco by letter, dated December 1, 2000, that it intended "to enforce Section 25241 pursuant to its terms ...." It further advised Bronco that if it continued to use its labels in violation of section 25241, *326 "the Department may take disciplinary action against the license of Bronco Wine Company, up to and including revocation of [Bronco's] license."
On December 22, 2000, Bronco filed the present original petition for writ of mandate in this court prohibiting" enforcement of section 25241. Respondents and intervener filed briefs in opposition. We granted an alternative writ and issued a stay of enforcement pursuant to the consent of the parties.

Discussion

I

Preemption
Bronco contends that, as applied to wines sold in interstate and foreign commerce, section 25241 is preempted by federal law because it conflicts with federal regulations and federal certificates of label approval and therefore stands as a complete obstacle to the accomplishment of the federal statutory and regulatory scheme.
The respondents do not challenge the validity of Bronco's federal labels nor the regulations pursuant to which they were issued. They contend there is no conflict between the federal regulations and section 25241 because state and federal law share the same purpose and therefore state law does not stand as an obstacle to fulfillment of the purpose of the federal statute. Intervenor argues the federal scheme contemplates concurrent regulation which leaves the states free to impose greater restrictions in order to achieve a common end. We disagree with each of these claims.
We first consider the statutory and regulatory schemes.

A. The Statutory and Regulatory Background
Subdivision (b) of Section 25241 states the following prohibition:
"(b) No wine produced, bottled, labeled, offered for sale or sold in California shall use, in a brand name or otherwise, on any label, packaging material, or advertising, any of the names of viticultural significance listed in subdivision (c), unless that wine qualifies under Section 4.25a of Title 27 of the Code of Federal Regulations for the appellation of origin Napa County and includes on the label, packaging material, and advertising that appellation or a viticultural area appellation of origin that is located entirely within Napa County, subject to compliance with Section 25240.[7]
"Notwithstanding the above, this subdivision shall not grant any labeling, packaging, or advertising rights that are prohibited under federal law or regulations."[8]
*327 This subdivision prohibits the use of the word "Napa" or the name of any recognized viticultural area[9] contained entirely within Napa County, or any similar brand name that is likely to cause confusion as to the origin of the wine, on a wine label unless the wine meets the federal standards for an appellation of origin for the grape growing region suggested by the brand name. The federal standards generally require that a certain percentage of the wine contained in the bottle be derived from grapes grown within the designated appellation area. (See 27 C.F.R. § 4.25a (2002).)
The purpose of section 25241, as stated in the legislative findings, is to protect the reputation of Napa Valley wines and eliminate consumer deception resulting from the misleading use of brand names of viticultural significance in the labeling and advertising of bottled wine. (§ 25241, subd. (a).)[10] As respondents point out, and the legislative history demonstrates, section 25241 was enacted to close a perceived loophole in the existing federal regulatory scheme which allowed producers like petitioner Bronco to sell wines produced with grapes from areas other than Napa while using brand names suggesting the wine is sourced with Napa grapes. As we next show, there is no loophole. The federal scheme expressly authorizes Bronco to deliver, sell or introduce its wine into interstate *328 commerce with the approved labels prohibited by section 25241.
Soon after the repeal of prohibition, Congress enacted the Federal Alcohol Administration Act (27 U.S.C. § 201 et seq.)(hereafter FAAA) which established national rules for the distribution, production, and importation of alcoholic beverages in interstate commerce. (Rubin v. Coors Brewing Co. (1995) 514 U.S. 476, 480, 115 S.Ct. 1585, 1588, 131 L.Ed.2d 532, 537.)
The FAAA completely governs the interstate sale of wine. It makes it unlawful "[t]o sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or foreign commerce" wine unless it is "bottled, packaged, and labeled in conformity with ... regulations, to be prescribed by the [federal] Secretary of the Treasury ...." Accordingly, if a wine meets the federal requirements the producer has a right to sell it in interstate or foreign commerce. (27 U.S.C. § 205(e).)[11]
*329 The FAAA grants broad discretion to the Department of Treasury to fashion a regulatory scheme designed to protect consumers from false, misleading, or inaccurate labels and to protect competitors from unfair business practices. (Arrow Distilleries, Inc. v. Alexander (7th Cir. 1940) 109 F.2d 397, 402, cert, denied, 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412; Continental Distilling Corporation v. Shultz (D.C.Cir.1972) 472 F.2d 1367, 1370-1371; Taylor Wine Co., Inc. v. Department of the Treasury (1981) 509 F.Supp. 792, 793-794.) The Treasury, through the Bureau of Alcohol, Tobacco, and Firearms (hereafter the BATF) has promulgated extensive regulations implementing section 205 as applied to wine. (See 27 C.F.R. Pts. 1, 4, 9,12,13,16 (2002).)
The regulations establish a program that governs the procedure for the issuance, denial, and revocation of certificates of label approval (COLA). (27 C.F.R. §§ 13.1-13.92 (2002).) Wine may not be sold or shipped in interstate commerce unless federal officials first issue a COLA and the "wine is packaged, and ... marked, branded, and labeled in conformity" with the regulations. (27 C.F.R. §§ 4.30, 4.50 (2002).)[12] A winery desiring to use a particular label must submit an application that includes the complete set of labels to be used. (27 C.F.R. §§ 13.11 and 13.21 (2002).) The application and accompanying labels are reviewed by a BATF official, who must issue a COLA if the application "complies with applicable laws and regulations (27 C.F.R. § 13.21(a) (2002).) The holder of a COLA is known as a "permittee." (27 C.F.R. § 13.11 (2002).)
If the application is denied, the applicant has a right to appeal the decision. (27 C.F.R. §§ 13.25-13.27 (2002).) Once issued, a COLA is valid until revoked by the Chief of the Alcohol and Tobacco Programs Division upon a finding the label is not in compliance with the applicable laws and regulations. (27 C.F.R. § 13.41 (2002).)[13]
An application for a COLA must comply with the BATF's regulations on labeling. (27 C.F.R. §§ 4.1, 4.30(a) (2002).) A wine label is required to contain specified information including a brand name, the class or type of wine, the alcohol content, the name and address of the bottler, and the federal health warning for alcoholic beverages. (27 C.F.R. §§ 4.30(a), 4.32, 4.33(a), 16.21 (2002.)
*330 Generally, the regulations allow, but do not require, a wine label to specify the geographical area where the grapes used to produce the wine are grown. Such a specification is referred to as an appellation of origin. (See 27 C.F.R. § 4.25a (2002).) An appellation of American wine is the United States, a state, a combination of two or three states or counties, a county which must be identified as such, or a viticultural area. (27 C.F.R. § 4.25a (a)(1)(2002).) A viticultural area is defined as "[a] delimited grape growing region distinguishable by geographical features, the boundaries of which have been recognized and defined in part 9 ...." (27 C.F.R. §§ 4.25a (e)(1)(i) and 9.1-9.173 (2002).) American Viticultural Areas (hereafter AVA) are recognized and defined by regulation. (27 C.F.R. §§ 9.1-9.173 (2002).) Examples of recognized AVAs include the Napa Valley (27 C.F.R. § 9.23 (2002)), and areas wholly contained within the Napa Valley, such as Rutherford (27 C.F.R. § 9.133 (2002)), Stags Leap District (27 C.F.R. § 9.117 (2002)), Oakville (27 C.F.R. § 9.134 (2002)), St. Helena (27 C.F.R. § 9.149 (2002)), and Yountville (27 C.F.R. § 9.160 (2002)).
In order to use an appellation of origin, other than an AVA, on a wine label, at least 75 percent of the wine must be derived from grapes grown in the area indicated by the appellation, must be fully finished in the named appellation area, and must "conform[ ] to the laws and regulations of the named appellation area governing the composition, method of manufacture, and designation of wines made in such place." (27 C.F.R. § 4.25a (b)(1)(iii) (2002).)
By contrast, to use an AVA on a wine label, the AVA must be approved under Part 9 of the regulations, 85 percent of the wine must be derived from grapes grown within the AVA, and the wine must be fully finished within the state within which the labeled AVA is located. (27 C.F.R. § 4.25a (e)(3)(2002).)
Generally, the regulations prohibit any statement on a label "that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." (27 C.F.R. § 4.39(a)(1)(2002).) The regulations broadly prohibit misleading brand names. (27 C.F.R. § 4.33(b) (2002).)

B. The Grandfather Clause
The regulations generally prohibit the use of a brand name of viticultural significance "unless the wine meets the appellation of origin requirements for the geographic area named." (27 C.F.R. § 4.39(i)(1)(2002).) However, this limitation on the use of brand names of viticultural significance does not apply to brand names that were approved and in use prior to July 7, 1986. (27 C.F.R. § 4.39(i)(2) (2002).) It is the legal effect of this exception that is the subject of these proceedings.
Part 4.39(i) (2002) provides in pertinent part as follows:
"§ 4.39 Prohibited practices.
"........................
"(i) Geographic brand names.

"(1) ................
"(2) For brand names used in existing certificates of label approval issued prior to July 7, 1986:
"(i) The wine shall meet the appellation of origin requirements for the geographic area named; or
"(ii) The wine shall be labeled with an appellation of origin in accordance with *331 § 4.34(b) as to location and size of type of either:[14]
"(A) A county or a viticultural area, if the brand name bears the name of a geographic area smaller than a state, or;
"(B) A state, county or a viticultural area, if the brand name bears a state name; or
"(iii) The wine shall be labeled with some other statement which the appropriate ATF officer finds to be sufficient to dispel the impression that the geographic area suggested by the brand name is indicative of the origin of the wine.
"(3) A name has viticultural significance when it is the name of a state or county (or the foreign equivalents), when approved as a viticultural area in part 9 of this chapter, or by a foreign government, or when found to have viticultural significance by the appropriate ATF officer."
This part, which we shall refer to as the "grandfather clause," allows the holder of a COLA issued prior to July 7,1986, to use an AVA such as Napa Valley or Rutherford, for example, in a brand name, without meeting the requirement that 85 percent of the wine be derived from grapes grown in the respective AVA of Napa Valley or Rutherford, if the holder of the COLA satisfies either one of three tests: (1) the test for new brand names, that the wine meet the appellation of origin requirements for the geographic area named (27 C.F.R. § 4.39(i)(2)(i)(2002); (2) the wine is labeled with an appellation of origin (27 C.F.R. § 4.39(i)(2)(ii)(2002)), or (3) the wine is labeled with a statement which the Director finds sufficient to dispel the impression that the brand name is suggestive of the appellation of origin. (27 § 4.39(i)(2)(iii) (2002).)
The first test permits what the respondents and intervenor seek, compliance with the California law. However, there is a second test which Bronco meets.
The effect of the second test (27 C.F.R. § 4.39(i)(2)(ii) (2002) is to authorize the use of a geographic brand name for wine that is not produced with grapes from the named geographic area if the wine is labeled with an appellation of origin. For example, the brand name "Rutherford Vintners" may be used even though 85 percent of the wine is not produced with grapes grown in Rutherford, as long as the label specifies the appellation of origin, which may be Lodi or Stanislaus County.
The critical point in this action is that section 25241 prohibits the use of brand names in these circumstances. It prohibits the use of brand names on wine labels that are permitted by federal law and renders useless the federal COLAs issued for those labels.

C. Analysis
We first consider the parameters of the question before us. Because section 25241 applies to all wines produced, bottled, labeled, offered for sale or sold in California, it applies to wines sold in this state as well as to wine sold in interstate and foreign commerce. Bronco challenges the constitutional validity of section 25241 only as it applies to the sale of wine in interstate and foreign commerce. As we later show, Bronco, as authorized by state law, sells its wine to a distributor located in California for subsequent sale in interstate and foreign commerce.
*332 Thus, the question presented by the parties is whether California may bar the use of labels on bottled wine destined for export into interstate and foreign commerce, when those labels have been granted federal certificates of label approval pursuant to regulations that authorize what state law prohibits.

1. Federal Preemption Law
Under the Supremacy Clause of the United States Constitution, federal statutes and regulations preempt conflicting state law. (U.S. Const., art. VI, cl. 2; see Crosby v. National Foreign Trade Council (2000) 530 U.S. 363, 372, 120 S.Ct. 2288, 2293, 147 L.Ed.2d 352, 361.) In determining whether federal law preempts state law, the court's task is to determine congressional intent. (English v. General Electric Co. (1990) 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65, 74; Northwest Cent. Pipeline v. Kan. Corp. Comm'n (1989) 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509, 527.) That intent may be express or implied. It is express when Congress explicitly states it is preempting state authority. (Jones v. Rath Packing Co. (1977) 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 614.) It is implied when (1) it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the States to supplement federal law (Rice v. Santa Fe Elevator Corp. (1947) 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447), (2) where the state law directly conflicts with federal law because compliance with federal and state regulations is a physical impossibility (Florida Avocado Growers v. Paul (1963) 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-1218, 10 L.Ed.2d 248, 257), or (3) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Hines v. Davidowitz (1941) 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587; Capital Cities Cable, Inc. v. Crisp (1984) 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580, 588-589; Barnett Bank of Marion Cty, N.A v. Nelson (1996) 517 U.S. 25, 31-32, 116 S.Ct. 1103, 1107-1108, 134 L.Ed.2d 237, 244-245.) What is a sufficient obstacle is determined by examining the federal statute and identifying its purpose and intended effects. (Crosby v. National Foreign Trade Council, supra, 530 U.S. at p. 373, 120 S.Ct. at p. 2294, 147 L.Ed.2d at p. 361.)
Respondents contend there is a strong presumption against federal preemption of state legislation, where as here, Congress has legislated to prevent consumer deception, an area traditionally occupied by the states. (California v. ARC America Corp. (1989) 490 U.S. 93, 101, 109 S.Ct. 1661, 1665,104 L.Ed.2d 86, 94; United States v. Locke (2000) 529 U.S. 89, 108, 120 S.Ct. 1135, 1147, 146 L.Ed.2d 69, 89; see Rice v. Santa Fe Elevator Corp., supra, 331 U.S. at p. 230, 67 S.Ct. at p. 1152, 91 L.Ed, at p. 1459; Ray v. Atlantic Richfield Co. (1978) 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188; Florida Lime & Avocado Growers, Inc. v. Paul, supra, 373 U.S. at p. 146, 83 S.Ct. at p. 1219, 10 L.Ed.2d at p. 259.) We disagree.
"So long as Congress acts within an area delegated to it, the preemption of conflicting state or local actionand the validation of congressionally authorized state or local actionflow directly from the substantive source of whatever power Congress is exercising, coupled with the Supremacy Clause of Article VI; cases implicating this principle may pose complex questions of statutory construction but raise no controversial issues of power." (Tribe, American Constitutional Law (3d ed.2000) § 6-28, p. 1172, fn. omitted.)
*333 Bronco only challenges the validity of section 25241 as it applies to wine destined for interstate and foreign commerce. Congress has enacted legislation regulating the labeling of wine introduced into interstate and foreign commerce. Its authority to do so flows from its power under the commerce clause. Thus, the State's effort to prohibit the sale and shipment of bottled wine destined for interstate and foreign commerce by regulating the manner in which those bottles are labeled is preempted where that manner directly conflicts with federal law which fully regulates the manner in which wine shipped in interstate and foreign commerce is labeled. (McDermott v. Wisconsin (1913) 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754.)
In McDermott, supra, the Supreme Court struck down a Wisconsin statute which prohibited the sale of cans of a mixture of glucose and refiners' syrup unless it met specified content (glucose in a proportion exceeding 75 percent by weight) and labeling requirements ("`Glucose flavored with Maple Syrup,' `Glucose flavored with Sugar-cane Syrup,' `Glucose flavored with Refiners' Syrup,'"). The plaintiff, a Wisconsin retail merchant, purchased cans of the mixture from a wholesale merchant in Chicago and placed those cans on its own shelves for resale. The cans bore labels which did not meet the standards specified under Wisconsin law but were in accordance with the federal food and drugs act and had been expressly approved by federal regulators pursuant to that act. The federal act prohibited the introduction into interstate commerce any article of food or drugs which was adulterated or misbranded. The federal statute defined the terms "adulterated" and "misbranded", setting forth the requirements for labeling in compliance with federal law. (228 U.S. at pp. 126-127, 33 S.Ct. at pp. 432-433, 57 L.Ed, at pp. 763-764.)
First addressing the power of Congress to regulate in this area, the high court found the purpose of the federal statute is to prevent the misuse of the facilities of interstate commerce by protecting consumers from deceptive branding and adulterated food and drugs. That purpose is met when the federally approved labels are on the articles of food or medicine when they reach the consumer. Thus, the court concluded the requirements of the act were clearly within the power of Congress over interstate commerce. (228 U.S. at pp. 128-129, 33 S.Ct. at pp. 433-434, 57 L.Ed, at pp. 764-765.)
The court then found that while the state is permitted to regulate with "a view to the protection of its people against fraud or imposition by impure food or drugs .... it is equally well settled that the State may not, under the guise of exercising its police power or otherwise, impose burdens upon or discriminate against interstate commerce, nor may it enact legislation in conflict with the statutes of Congress passed for the regulation of the subject, and if it does, to the extent that the state law interferes with or frustrates the operation of the acts of Congress, its provisions must yield to the superior Federal power given to Congress by the Constitution." (Id. at pp. 131-132, 33 S.Ct. at pp. 434-35, 57 L.Ed, at p. 766.) The court reasoned that to permit Wisconsin to regulate in the manner it chose, "is to permit a state to discredit and burden legitimate Federal regulations of interstate commerce, to destroy rights arising out of the Federal statute which have accrued both to the Government and the shipper, and to impair the effect of a Federal law which has been enacted under the Constitutional power of Congress over the subject." (Id. at pp. 133-134, 33 S.Ct. at pp. 435-436, 57 L.Ed, at pp. 766-767.) The court therefore concluded that to require *334 the removal or destruction of the federally approved labels before the goods are sold is beyond the power of the state. "The Wisconsin act which permits the sale of articles subject to the regulations of interstate commerce only upon condition that they contain the exclusive labels required by the statute is an act in excess of its legitimate power." (Id. at pp. 134, 33 S.Ct. at p. 436, 57 L.Ed, at pp. 767.)
Similarly, the federal statutory and regulatory scheme before us provide a comprehensive means to protect consumers against deceptive labeling on bottled wine. That scheme prohibits the sale or shipment of wine in interstate and foreign commerce unless federal officials have issued a COLA and the wine is packaged, labeled, and branded in conformity with federal law. (27 C.F.R. §§ 4.30, 4.50 (2002).) The use of misleading brand names on labels is prohibited (27 C.F.R. § 4.33(b)(2002)) and the issuance of a COLA is certification by federal officials that the label complies with federal law. (27 C.F.R. § 13.21(a) (2002).) Thus, by prohibiting Bronco from selling its wine in interstate and foreign commerce with labels approved under federal law, section 25241 stands as a direct "obstacle" to the federal scheme which authorizes the export of wine bearing a federally approved label.
Nevertheless, citing to the regulations (27 C.F.R. § 4.25a (b)(1)(iii) (2002) and the Twenty-First Amendment,[15] intervenor argues there is no federal interest in a national uniform wine labeling system and urges us to conclude that Congress contemplated a dual regulatory system in which federal law merely provides a minimum basis of regulation. We disagree.
The federal statutory and regulatory language expressly state otherwise. (Hughes Aircraft Co. v. Jacobson (1999) 525 U.S. 432, 438, 119 S.Ct. 755, 760, 142 L.Ed.2d 881, 891.) The federal statute contains no express preemption provision, and it is clear from the regulatory language that dual regulation is contemplated to a limited extent. Part 4.25a of the regulation, relating to appellations of origin, *335 provides that an "American wine is entitled to an appellation of origin other than ... a viticultural area, if [¶] ... (iii) it conforms to the laws and regulations of the named appellation area governing the composition, method of manufacture, and designation of wines made in such place." (27 C.F.R. § 4.25a (b)(1) (2002), emphasis added).)[16],[17] Similarly, imported wine is entitled to an appellation of origin other than a viticultural area if the wine "conforms to the requirements of the foreign laws and regulations governing the composition, method of production, and designation of wines ...." (27 C.F.R. § 4.25a (b)(2)(ii)(2002), emphasis added.) However, there is no similar requirement that an American wine labeled with an AVA (American Viticultural Area) conform to state law. (See 27 C.F.R. § 4.25a (e)(3)(iv) (2002).) Rather, brand names are exclusively governed by the federal regulation.
Thus, geographic brand names of viticultural significance are not subject to state regulation. Part 4.39(i)(1) (2002) provides that brand names of viticultural significance used in new COLAs may not be used unless the wine meets the appellation of origin requirements for the geographic area named (27 C.F.R. § 4.39(i)(1) (2002)), and, as we have just stated, the requirements relating to AVAs do not require conformance to state laws and regulations. (27 C.F.R. § 4.25a (e)(3)(iv) (2002).) Likewise, there is no requirement that brand names of viticultural significance used in COLAs issued prior to July 7, 1986, conform to state law. (27 C.F.R. § 4.39(i)(1) and (2) (2002).)
In sum, while 27 Code of Federal Regulations part 4.25a (b)(1)(iii)(2002) clearly contemplates state regulation of the appellation of origin for American and imported wine, i.e. "the composition, method of manufacture, and designation of wines made in such place," the grandfather clause does not authorize state regulation of geographic brand names of viticultural significance. The thrust of the respondents' and intervener's arguments is that the federal system does not provide a complete regulation of interstate sale of wine. That is incorrect. Bronco's federal right to sell its wine interstate is expressly granted under the grandfather clause of 27 Code of Federal Regulations part 39(i)(2)(ii) (2002). There is no grammatical room in this provision for the claim the state may impose an additional requirement on Bronco not contained in the federal law.

2. The History of the Grandfather Clause
There is no doubt that the grandfather clause gives Bronco an express right to introduce its wine in interstate commerce. However, in an excess of caution, Bronco asserts the regulatory history of 27 Code of Federal Regulations part 4.39(i) (2002), establishes the grandfather clause means precisely what it says.
When the original regulations were adopted under the FAAA in 1935, there *336 was no counterpart to part 4.39(i). (49 Fed.Reg. 19330, 19331 (May 7, 1984).) Instead, part 4.33(b), providing for the general regulation concerning misleading brand names, required that, as a condition for the use of a geographic brand name, at least 75 percent of the grapes must be sourced from the area indicated by the brand name, or the word "brand" had to appear in direct conjunction with the geographic brand name and in a size that was one-half the size of the brand name. (49 Fed.Reg., supra, at p. 19331.) For example, the use of a brand name such as "Napa Ridge" was conditioned on compliance with the requirement that 75 percent of the grapes used to produce the wine be sourced with grapes from Napa County or that the wine be labeled "Napa Ridge Brand." This requirement reflected a concern by the regulating agency, the wine industry, and the general public that a geographic brand name conveyed a misleading impression and the belief the use of the word "brand" would dispel any confusion regarding the origin of the grapes used to produce the wine. (Ibid.)
In 1938 the regulations were amended to introduce the concept of appellations of origin and a separate section entitled "Appellation of origin" was created. (27 C.F.R. § 4.25 (1938).) To be entitled to designate the appellation of origin, at least 75 percent of the wine's volume had to be produced with grapes grown in the area indicated by the appellation. Additionally, as to geographical brand names, part 4.33(b) was amended to remove all restrictions on geographic brand names unless the brand name was found to be misleading by an ATF official, in which case the word "brand" had to appear in conjunction with the brand name. (49 Fed.Reg., supra, at p. 19331.) Theoretically, the brand name of "Napa Ridge" was lawful unless a BATF officer concluded it was misleading, in which case the word "brand" would have to appear alongside the name as "Napa Ridge Brand."
The regulations concerning geographic brand names remained unchanged until 1978 when amendments to the regulations were issued that would have been more restrictive than any to date. The amendments set forth a new provision, part 4.39(i), which prohibited the use of a brand name of geographic significance unless it met one of two requirements, either (1) the wine meet the appellation of origin requirements for that area (the 75 percent requirement) and was bottled in that area, or (2) the brand name was qualified by the word "brand" in the same size type and as conspicuous as the brand name, for example "Napa Ridge Brand." (49 Fed.Reg., supra, at p. 19331; 51 Fed.Reg. 20480-02 (June 5,1986).)
The mandatory compliance date was extended and in support of their petition to defer the mandatory compliance date, winemakers argued that the word "brand" was not aesthetic and would not preclude misleading impressions conveyed by a geographic brand name. (51 Fed.Reg., supra, at p. 20481.) The BATF concluded the regulation was too restrictive and restrained creativity in selecting brand names. (49 Fed.Reg., supra, at p. 19331.) For various reasons, including unrelated litigation, BATF delayed the effective date of the new regulation until January 1, 1987. (51 Fed.Reg., supra, at p. 20481.) In the end, the regulation never took effect.
However, in 1984, during this period of delay, and in response to the concerns of the winemakers, BATF proposed four alternatives to the existing regulation and published them for comment. Alternative 1 left the regulation as stated in the 1978 amendments; Alternative 2 eliminated the current regulation, and therefore, a brand *337 name of geographic significance could be used unless found to be misleading, in which case it would have to be qualified by the word "brand" under part 4.33(b).[18] Alternative 3 left the existing requirements of part 4.39(i) in place but amended the type size requirement for the word "brand" by requiring that it only be half the size of the brand name, i.e. Napa Ridge Brand; Alternative 4, which the BATF proposed, prohibited the use of a brand name of viticultural significance unless (a) a correct appellation of origin was used and the wine was bottled in that appellation, or (b) the brand name was qualified by the word "brand" in the same size of type and as conspicuous as the brand name itself, or (c) the wine was labeled with an appellation of origin as specified, or (d) the label bears a statement found by the Director to dispel any misconception about the appellation of origin. (51 Fed.Reg., supra, at p. 20481.) None of these alternatives were adopted in whole.
In 1986, after public hearings and review of comments, BATF adopted the current regulation. (27 C.F.R. § 4.39(i)(1986).) As set forth ante, as to new labels, the rule is stricter than any of the proposed alternatives. BATF believed the brand name, because it is the most prominent item on a wine label, indicates to the consumer the place where the grapes used to produce the wine are grown. The BATF concluded the word "brand" does not dispel a misleading impression conveyed by a brand name of viticultural significance which does not meet the appellation of origin requirements for the geographic area named. (51 Fed.Reg., supra, at p. 20481.)
However, for brand names of viticultural significance used in COLAs issued prior to July 7, 1986, the effective date of the rule, the regulation requires that an appellation of origin be specified on the label. (27 C.F.R. § 4.39(i)(2)(ii)(2002).) The BATF concluded the rule would provide the industry "with sufficient flexibility in designing their labels, while at the same time providing consumers with protection from any misleading impressions that might arise from the use of geographic brand names." (51 Fed.Reg., supra, at p. 20482.) In effect, this rule takes the 1938 regulation one step further in "the general belief ... that an appellation of origin would dispel misleading impressions that a geographic brand name may have conveyed." (49 Fed.Reg., supra, at p. 19331.)
Thus, the rule-making history clearly indicates that the BATF considered several alternative means of protecting consumers while also attempting to protect the competing interests of fair competition and existing economic interests. In so doing, the BATF considered the alternative expressed in section 25241 and deliberately rejected it as inappropriate. In so doing, the BATF preempted the states from enacting such a rule. (Ray v. Atlantic Richfield Co., supra, 435 U.S. at p. 178, 98 S.Ct. at p. 1004, 55 L.Ed.2d at p. 201.)
Nevertheless, respondents contend the grandfather provision is based upon a compromise of consumer protection in favor of market factors that goes beyond the congressional purpose, and that section 25241 is not preempted because it has the same consumer-protection objective as the FAAA. We reject both arguments.
Respondents make no direct claim the federal regulation is invalid. (See fn. 4, *338 supra.) As for the compromise, we think BATF struck a legitimate regulatory balance between the interests of consumer protection and unfair business practices. (See Arrow Distilleries, Inc. v. Alexander, supra, 109 F.2d at p. 402; Continental Distilling Corporation v. Shultz, supra, 472 F.2d at pp. 1370-1371.) Defining unfair competition and business practices necessarily includes considerations of market factors.
As to respondents' second claim, the Supreme Court has rejected the argument that state law is not preempted by federal law when the two regulations share common goals. (Florida Lime & Avocado Growers, supra, 373 U.S. at p. 142, 83 S.Ct. at p. 1217, 10 L.Ed.2d at p. 256.) "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this [shared] goal." (International Paper Co. v. Ouellette (1987) 479 U.S. 481, 494, 107 S.Ct. 805, 813, 93 L.Ed.2d 883, 900; Crosby v. National Foreign Trade Council, supra, 530 U.S. at pp. 379-380, 120 S.Ct. at pp. 2297-2298, 147 L.Ed.2d at pp. 365-366; Gade v. National Solid Wastes Management Assn. (1992) 505 U.S. 88, 103, 112 S.Ct. 2374, 2385, 120 L.Ed.2d 73, 88 (Illinois worker safety law with identical purpose to federal Occupational Safety and Health Act preempted where it interfered with methods of the federal statute); Ray v. Atlantic Richfield Co., supra, 435 U.S. at p. 165, 98 S.Ct. at p. 998, 55 L.Ed.2d at p. 193, (state law shared same goals with federal scheme, but interfered with the methods of the federal scheme regulating vessel safety and marine environment protection).)
Section 25241 interferes with federal regulations that expressly authorize the use of brand names of viticultural significance on wine labels bearing appellations of origin by effectively nullifying the effect of the COLAs issued for those labels. We therefore hold that section 25241 is preempted by federal regulations and federal COLAs as to brand names on wine labels destined for interstate and foreign commerce.
We have left to consider the effect of this holding on section 25241.

II

Severability
A statute that is constitutionally invalid is "not ineffective and inoperative to the extent that its invalid parts can be severed from any valid ones." (Hotel Employees & Restaurant Employees Internat. Union v. Davis (1999) 21 Cal.4th 585, 613, 88 Cal.Rptr.2d 56, 981 P.2d 990 (Hotel Employees); Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 821-822, 258 Cal.Rptr. 161, 771 P.2d 1247 (Calfarm Ins. Co.); People's Advocate, Inc. v. Superior Court (1986) 181 Cal.App.3d 316, 330, 226 Cal.Rptr. 640.) "An invalid part can be severed if, and only if, it is `grammatically, functionally and volitionally separable.'" (Hotel Employees, supra, 21 Cal.4th at p. 613, 88 Cal.Rptr.2d 56, 981 P.2d 990, quoting Calfarm Ins. Co., supra, 48 Cal.3d at p. 821, 258 Cal.Rptr. 161, 771 P.2d 1247.)
We find section 25241, as applied, fails the grammatical test and is therefore wholly invalid.
This Court has discussed the concept of grammatical severability. "Severability `"is possible and proper where the language of the statute is mechanically severable, that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words. [Citations.] [W]here there is no possibility of mechanical severance, as where the language is so broad as to cover subjects within and without the legislative power, *339 and the defect cannot be cured by excising any word or group of words, the problem is quite different and more difficult of solution."'" (People's Advocate, Inc. v. Superior Court, supra, 181 Cal.App.3d at p. 330, 226 Cal.Rptr. 640, (People's Advocate, Inc.), italics in original, quoting Santa Barbara Sch. Dist. v. Superior Court (1975) 13 Cal.3d 315, 330-331, 118 Cal.Rptr. 637, 530 P.2d 605, quoting from In re Blaney (1947) 30 Cal.2d 643, 655, 184 P.2d 892.)
Bronco contends that, on its face, section 25241 contains no distinct and severable provision relating to wines destined for sale in interstate and foreign commerce. They argue the application of the statute to interstate and intrastate commerce cannot be separated grammatically because of the structure of the statute and other provisions of the Alcoholic Beverage Control Act, and the custom of doing business within a nationwide "three-tier system" of suppliers, wholesalers, and retailers.
Intervenor, joined by respondents, argues the only part of the statute that has direct extraterritorial effect relates to wine that is "produced, bottled, [or] labeled" in California. (§ 25241, subd.(b).) That portion, they claim, is easily severable from the part of section 25241 which regulates wine "offered for sale or sold" in California. These sales, according to intervenor, are wholly intrastate transactions subject to state regulation. We disagree.
It is readily apparent the terms "produced, bottled, [or] labeled ... in California" apply equally to wines destined for sale to consumers within California and to wine destined for sale to consumers outside California. Thus, application of these terms to wines destined for intrastate sale cannot be severed from the application of these terms to wines destined for interstate and foreign commerce.
Intervenor essentially claims that as long as the wine is sold first to a California wholesaler before it is sold or shipped outside of California, the wine is not in interstate and foreign commerce. We disagree with respondents.
The legislative history of section 25241 demonstrates the Legislature's objective in enacting section 25241 was to halt the sale and advertisement of wine bearing the prohibited brand names by closing the "loophole" in the grandfather clause of the federal wine labeling regulations concerning geographic brand names.[19]
The statute's prohibitory clause states:
"No wine produced bottled labeled, offered for sale or sold in California shall use, in a brand name or otherwise, on any label, packaging material, or advertising, any of the names of viticultural significance listed in subdivision (c), unless that wine qualifies under Section 4.25a of Title 27 of the Code of Federal Regulations for the appellation of origin Napa County and includes on the label, packaging material, and advertising that appellation or a viticultural area appellation of origin that is located entirely within Napa County, subject to compliance with Section 25240." (§ 25241, subd. (b), emphasis added.)
Section 25241 does not, by its terms, distinguish between wine destined for sale within California and wine destined for *340 sale outside California. The terms "offered for sale or sold in California" also apply both to wines sold to California consumers as well as to wine destined for sale outside California. Section 25241 does not define "offered for sale or sold in California" nor does it limit those transactions to sales to California consumers. Rather, the terms "sell," "sale" and "to sell," are defined in another section, section 23025, to include "any transaction whereby ... title to alcoholic beverages is transferred from one person to another, and includes the delivery of alcoholic beverages pursuant to an order placed for the purchase of such beverages and soliciting or receiving an order for such beverages ...." Moreover, section 23026 defines "`[r]etail sale'" and "`sale at retail'" as "the sale by an on- or off-sale licensee for consumption and not for resale," while section 23027 defines "`[w]holesale sale'" and "`sale at wholesale' " as "a sale to any licensee for purposes of resale."
In sum, "sale" includes both retail sales to consumers and sales to a licensed wholesaler for purposes of resale outside of California.
Bronco's California license as a manufacturer or wine grower authorizes it, among other things, to "export" its wine, as well as to sell its wine to "persons holding wholesaler's ... licenses ... and to persons who take delivery of such alcoholic beverages within this State for delivery or use without the State." (§ 23356, subd. (c).[20]
It is Bronco's business practice, as authorized by statute, to sell all of its wine to California wholesalers who then sell it to California retailers and to wholesalers or retailers outside California. Thus, all of Bronco's wine is sold first by Bronco within California, regardless whether the wine is destined for resale to California consumers or to consumers in national and foreign markets. Section 25241, within the statutory scheme of which it is a part, does not provide a grammatical or functional mechanism by which to determine which wine is sold to wholesalers for resale in California and which wine is sold for resale outside California.
It is well established that goods destined for sale outside the state of production are a part of interstate commerce as soon as they begin their journey to the ultimate consumer, regardless whether the party making the sale transports the goods across state or national lines before title first passes to another party. (See Maryland v. Louisiana (1981) 451 U.S. 725, 755, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576, 601 ("Gas crossing a state line at any stage of its movement to the ultimate consumer is in interstate commerce during the entire journey."); Shafer v. Farmers Grain Co. (1925) 268 U.S. 189, 199-201, 45 S.Ct. 481, 485-486, 69 L.Ed. 909, 915 (wheat produced within North Dakota and sold within the state is part of interstate commerce when offered for shipment outside the state); U.S. v. Food, 2998 Cases (5th Cir. 1995) 64 F.3d 984, 988 (goods destined for *341 sale to a state other than the place from which they are shipped are in interstate commerce for the entire journey).) Therefore, wine produced in California for shipment and resale outside California is wine in interstate and foreign commerce, whether the producer of the wine exports it directly or sells it to a California wholesaler who then sells it for shipment outside of California.
Intervenor argues that Bronco mischaracterizes the "three-tier-system," claiming it is not required to sell its wine to wholesalers within California and that Bronco's decision to sell all of its wine to in-state wholesalers rather than to export it directly, is merely a business practice which Bronco has freely chosen because it is presumably more profitable. Intervenor therefore concludes the three-tier system used by other states, which Bronco has chosen to use, does not "preempt" section 25241. Intervenor is mistaken.
First, we have already determined the question of preemption. Second, for purposes of determining severability, the issue does not turn on the effect of a three-tiered system used in other states but rather the application of section 25241 within the statutory scheme of which it is a part. That scheme defines the sale of wine to include sale of wine to wholesalers for resale within California as well as for resale in interstate and foreign commerce. (§§ 23025, 23027.) As we have stated, as a manufacturer or winegrower, Bronco's license authorizes it to sell its wine to California wholesalers for shipment out-of-state. (§ 23356, subd. (c).)
While the statutory scheme does not require that a California wholesaler be employed to sell and distribute wine in interstate and foreign commerce, it authorizes that practice. As a result, the terms "offered for sale or sold in California" necessarily apply to the sale of wine destined for California markets as well as to national and foreign markets. For this reason, the language of section 25241 is "`"so broad as to cover subjects within and without the legislative power ... [which] cannot be cured by excising any word or group of words ...."'" (People's Advocate Inc., supra, 181 Cal.App.3d at p. 330, 226 Cal. Rptr. 640, quoting from Santa Barbara Sch. Dist. v. Sup. Ct. (1975) 13 Cal.3d at pp. 330-331, 118 Cal.Rptr. 637, 530 P.2d 605, emphasis added.)
Because under the grammatical test, application of the statutory terms to wine sold within California is not severable from application of the statute to wine destined for interstate and foreign commerce under the grammatical test, we hold that the statute as a whole is invalid.

DISPOSITION
Let a peremptory writ of mandate issue to respondent Manuel R. Espinoza, Interim Director of the Department of Alcoholic Beverage Control, and respondent Department of Alcoholic Beverage Control, directing them to take no action to enforce Business and Professions Code section 25241. The alternative writ, issued July 18, 2001, in this proceeding, is discharged. The previously issued stay of enforcement of section 25241 is vacated. Bronco is awarded its costs in these proceedings. (Cal. Rules of Court, rule 56.4(a).)
We concur: RAYE and MORRISON, J.
NOTES
[1] Business and Professions Code section 23090.5 divests the Superior Court of jurisdiction to enjoin or restrain a decision of the Department of Alcoholic Beverage Control, the agency charged with enforcing Business and Professions Code section 25241. The respondents have stipulated that jurisdiction to issue a writ of mandate lies with this court. Intervenor filed a pleading challenging our subject matter jurisdiction but made no supporting argument. It has therefore waived the issue.
[2] All further references to a section are to the Business and Professions Code unless otherwise designated or implied from the context.
[3] Because we resolve the case on grounds of preemption, we need not address Bronco's contentions that section 25241 violates the First Amendment and the Commerce and Takings clauses of the United States Constitution.
[4] Respondents contend the conflicting federal regulation at issue in these proceedings (27 C.F.R. § 4.39(i)(2)(ii) (2002), is not supported by any factual findings that labels exempted by the provision are less likely to mislead consumers. This is a challenge of sort to the regulation. Nevertheless, respondents make clear in their return that they "are not challenging the lawfulness of the BATF regulations in this case" and frame "the issue for this Court [as] simply whether the BATF's grandfathering provisionwhich Respondents assume is valid federal lawestablishes a minimum standard for wine labels or a maximum limitation on state regulation." We therefore assume the validity of the regulations and address the issue tendered by respondents.
[5] Respondents' motion for judicial notice of petitioner's complaint in Bronco Wine Company v. United States Department of the Treasury et al, 997 F.Supp. 1309 (E.D.Cal.1996) is denied as immaterial to the issue in this case. (Evid.Code, § 452, subd: (d).)

Intervener's motion for judicial notice of documents relating to (1) the federal criminal prosecution against Bronco and its owner; (2) Bronco's suit against the BATF regarding the seizure of Rutherford Vintner's wine; and (3) the ensuing BATF action to revoke Bronco's operating permit is also denied as immaterial to a resolution of the issue in this case.
[6] The labels are divided in the record into sections for each of the three brand names. The labels selected for display here are the first from each section.
[7] Section 25240 states:

"Any wine labeled with a viticultural area appellation of origin established pursuant to Part 9 (commencing with Section 9.1) of Title 27 of the Code of Federal Regulations, other than the viticultural area `Napa Valley,' and which is located entirely within a county of the 29th class, shall bear the designation `Napa Valley' on the label in direct conjunction therewith in a type size not smaller than 1mm less than that of the viticultural area designation provided neither designation is smaller than 2mm on containers of more than 187ml or smaller than 1mm on containers of 187ml or less. This requirement shall apply to all wines bottled on or after January 1, 1990.
"The department may suspend or revoke the license of any person who violates this section."
[8] The remaining substantive provisions of section 25241 are as follows:

"(c) The following are names of viticultural significance for purposes of this section:
"(1) Napa.
"(2) Any viticultural area appellation of origin established pursuant to Part 9 (commencing with Section 9.1) of Title 27 of the Code of Federal Regulations that is located entirely within Napa County.
"(3) Any similar name to those in paragraph (1) or (2) that is likely to cause confusion as to the origin of the wine.
"(d) The appellation of origin required by this section shall meet the legibility and size-of-type requirements set forth in either Section 4.38 or Section 4.63 of Title 27 of the Code of Federal Regulations, whichever is applicable.
"(e) Notwithstanding subdivision (b), any name of viticultural significance may appear either as part of the address required by Sections 4.35 and 4.62 of Title 27 of the Code of Federal Regulations, if it is also the post office address of the bottling or producing winery or of the permittee responsible for the advertising, or as part of any factual, nonmisleading statement as to the history or location of the winery.
"(f) The department may suspend or revoke the license of any person who produces or bottles wine who violates this section. Following notice of violation to the person in possession of the wine and a hearing to be held within 15 days thereafter, if requested by any interested party within five days following the notice, the department may seize wine labeled or packaged in violation of this section regardless of where found, and may dispose of the wine upon order of the department. From the time of notice until the departmental determination, the wine shall not be sold or transferred.
"(g) This section applies only to wine which is produced, bottled, or labeled after January 1, 2001."
[9] A viticultural area is a grape growing region defined by federal law. (27 C.F.R. §§ 4.25a(e) and 9.1-9.173 (2002).)
[10] Section 25241 states the Legislature's findings as follows:

"(a)(1) The Legislature finds and declares that for more than a century, Napa Valley and Napa County have been widely recognized for producing grapes and wine of the highest quality. Both consumers and the wine industry understand the name Napa County and the viticultural area appellations of origin contained within Napa County (collectively `Napa appellations') as denoting that the wine was created with the distinctive grapes grown in Napa County.
"(2) The Legislature finds, however, that certain producers are using Napa appellations on labels, on packaging materials, and in advertising for wines that are not made from grapes grown in Napa County, and that consumers are confused and deceived by these practices.
"(3) The Legislature further finds that legislation is necessary to eliminate these misleading practices. It is the intent of the Legislature to assure consumers that the wines produced or sold in the state with brand names, packaging materials, or advertising referring to Napa appellations in fact qualify for the Napa County appellation of origin."
[11] 27 United States Code section 205(e), provides in pertinent part:

"It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer ...:
(e) "Labeling. To sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or foreign commerce, or to receive therein, or to remove from customs custody for consumption, any distilled spirits, wine, or malt beverages in bottles, unless such products are bottled, packaged, and labeled in conformity with such regulations, to be prescribed by the Secretary of the Treasury, with respect to packaging, marking, branding, and labeling and size and fill of container (1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer; (2) as will provide the consumer with adequate information as to the identity and quality of the products, the alcoholic content thereof (except that statements of, or statements likely to be considered as statements of, alcoholic content of malt beverages are prohibited unless required by State law and except that, in case of wines, statements of alcoholic content shall be required only for wines containing more than 14 per centum of alcohol by volume), the net contents of the package, and the manufacturer or bottler or importer of the product; (3) as will require an accurate statement, in the case of distilled spirits (other than cordials, liqueurs, and specialties) produced by blending or rectification, if neutral spirits have been used in the production thereof, informing the consumer of the percentage of neutral spirits so used and of the name of the commodity from which such neutral spirits have been distilled, or in case of neutral spirits or of gin produced by a process of continuous distillation, the name of the commodity from which distilled; (4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene, or indecent; and (5) as will prevent deception of the consumer by use of a trade or brand name that is the name of any living individual of public prominence, or existing private or public organization, or is a name that is in simulation or is an abbreviation thereof, and as will prevent the use of a graphic, pictorial, or emblematic representation of any such individual or organization, if the use of such name or representation is likely falsely to lead the consumer to believe that the product has been indorsed, made, or used by, or produced for, or under the supervision of, or in accordance with the specifications of, such individual or organization: Provided, That this clause shall not apply to the use of the name of any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer, wholesaler, retailer, bottler, or warehouseman, of distilled spirits, wine, or malt beverages, nor to the use by any person of a trade or brand name used by him or his predecessor in interest prior to August 19, 1935; including regulations requiring, at time of release from customs custody, certificates issued by foreign governments covering origin, age, and identity of imported products: Provided further, That nothing herein nor any decision, ruling, or regulation of any Department of the Government shall deny the right of any person to use any trade name or brand of foreign origin not presently effectively registered in the United States Patent and Trademark Office which has been used by such person or predecessors in the United States for a period of at least five years last past, if the use of such name or brand is qualified by the name of the locality in the United States in which the product is produced, and, in the case of the use of such name or brand on any label or in any advertisement, if such qualification is as conspicuous as such name or brand.
[12] By regulation, California requires that the permittee responsible for labeling have a valid COLA obtained from the United States Treasury Department. (Cal.Code Regs., tit. 17, § 17075, subd. (a).) California has adopted regulations that make the federal regulations "applicable to all the wine produced, imported, bottled, offered for sale or sold within the state for beverage use," to the extent not otherwise specified or excepted. (Cal.Code Regs., tit. 17, § 17001, subd. (a).) The federal regulations governing definitions and standards of identity and quality for wine also are made applicable in California. (Id., § 17001, subd. (b).)
[13] Prior to revocation, the permittee receives notice and is given the opportunity to be heard. (27 C.F.R. §§ 13.42 and 13.43 (2002).) A decision to revoke a COLA may also be appealed within the BATF and then in the federal courts. (27 C.F.R. § 13.44 (2002).) A COLA is also subject to revocation by operation of law or regulation in the event the governing law or regulation has changed a labeling or other requirement. (27 C.F.R. § 13.51 (2002).)
[14] 27 Code of Federal Regulations section 4.34(b) (2002) requires that the appellation of origin "appear in direct conjunction with and in lettering substantially as conspicuous as the class and type designation ...."
[15] The Twenty-first Amendment provides in pertinent part: "The transportation or importation into any state ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." (U.S. Const., 21st Amend., § 2.) Under this amendment, the states enjoy broad power to regulate the "importation and use of intoxicating liquor within their borders ..." (Capital Cities Cable, Inc. v. Crisp, supra, 467 U.S. at p. 712, 104 S.Ct. at p. 2707, 81 L.Ed.2d at p. 597; Boiler Beverages, Inc. v. Davis, (1962) 38 N.J. 138, 183 A.2d 64, 69-70.) While the Twenty-First Amendment limits the effect of the dormant Commerce Clause, it "does not in any way diminish the force of the Supremacy Clause." (44 Liquormart, Inc. v. Rhode Island (1996) 517 U.S. 484, 516-517, 116 S.Ct. 1495, 1514-1515, 134 L.Ed.2d 711, 736; Capital Cities Cable, Inc., supra, 467 U.S. at p. 716, 104 S.Ct. at p. 2709, 81 L.Ed.2d at p. 600.)

The Commerce Clause is an express grant of power to Congress "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." (U.S. Const., art. I, § 8, cl.3.) It is also an implicit limitation on the states' power to regulate both domestic interstate and foreign commerce, whether or not Congress has acted. (Oregon Waste Systems, Inc. v. Dept. of Environmental Quality of Ore. (1994) 511 U.S. 93, 97-98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13, 20.) This implicit limitation is commonly referred to as the "negative" or "dormant" commerce clause. (Barclays Bank v. Franchise Tax Bd. of Cal. (1994) 512 U.S. 298, 311, fn. 9, 114 S.Ct. 2268, 2276, fn. 9, 129 L.Ed.2d 244, 257.) Pursuant to its restrictive authority, "any state statute or regulation that impacts domestic interstate or foreign commerce is subject to judicial scrutiny under the [dormant] commerce clause unless the statute or regulation has been preempted, or expressly authorized, by an act of Congress." (Pacific Merchant Shipping Assn. v. Voss (1995) 12 Cal.4th 503, 514, 48 Cal.Rptr.2d 582, 907 P.2d 430.)
[16] A wine's "designation" is distinct from its "brand name" or appellation and refers to the class or type of wine rather than the source-location of the wine. (27 C.F.R. §§ 4.32(a)(2), 4.34(a)(b) (2002).) For example, a wine may be designated by class as a grape wine, sparkling grape wine such as champagne, or a carbonated grape wine (27 C.F.R. § 4.21 (2002)), or by type which refers to the grape varietal. (27 C.F.R. §§ 4.23(a), 4.24, 4.28 (2002).)
[17] California has exercised this authority to impose additional standards relating to the "method of manufacture" and "composition" of wines bearing California appellations, by imposing stricter standards for the use of water and sugar in the production of grape wine (Cal Code Regs., tit. 17, § 17010, subd. (a)) and by requiring that wines bearing the appellation of origin "California" consist of 100 percent California sourced grapes. (Cal. Code Regs., tit. 17, § 17015, subd. (a)(1).)
[18] The BATF expressed its view of this alternative stating that "ATF believes the wine industry should be allowed flexibility in selecting brand names under which to market their products without having a whole class of brand names become totally unusable." (49 Fed.Reg., supra, at pp. 19331-19332.)
[19] The legislative history is replete with statements regarding the worldwide reputation of Napa Valley wines and the necessity of closing the federal loophole to protect that reputation. The inference is unmistakeable that section 25241 was designed to reach interstate and foreign commerce because federal wine labeling regulations apply only to wines shipped or sold in interstate and foreign commerce. (27 U.S.C. § 205(e); 27 C.F.R. § 4.30(a) (2002).) In attempting to close that "loophole" the Legislature clearly sought to affect the shipment of wine in interstate and foreign commerce.
[20] Under a traditional "three-tier system" of producers, wholesalers, and retailers, a winery is not authorized to sell its wine directly to out-of-state retailers or consumers, but must operate within the three-tier system. (See Bridenbaugh v. Freeman-Wilson (7th Cir. 2000) 227 F.3d 848, 851, cert, denied, (2000) 532 U.S. 1002, 121 S.Ct. 1672, 149 L.Ed.2d 652, (explaining three-tier system and legal barriers to direct sales by wine producers to consumers located in other states); Kendall-Jackson Winery, Ltd. v. Branson (N.D.Ill.2000) 82 F.Supp.2d 844, 850-851.) California's system is not a true "three-tier system" because it allows the manufacturer or producer of alcoholic beverages to export its alcoholic beverages directly without going through a California wholesaler. (§ 23356, subd. (b).)